ASENATH E. MUSSEY, Appellant, *vs.* HELEN M. SHAW,
Appellee.—(HELEN M. SHAW, Appellant, *vs.* ASENATH
E. MUSSEY, Appellee.)

*Opinion filed June 22, 1916—Rehearing denied October 5, 1916.*

1. DEEDS—*where confidential relation exists the grantee must
prove transaction fair.* Where a confidential relation is shown to
exist between the aged grantor in a voluntary conveyance and the
grantee, her daughter, equity raises a presumption against the val-
idity of the transaction and casts upon the grantee the burden of
proving that the transaction was fair and reasonable.

2. TRUSTS—*when defense of Statute of Frauds need not be con-
sidered.* Where the answer to a bill to establish a trust admits that
the defendant received the property upon an agreement that she
should turn over to the complainant the rents and profits, less the
running expenses of the property, the defense of the Statute of
Frauds, set up in the same answer, need not be considered.

3. SAME—*equity will not permit a grantee to repudiate obliga-
tion.* Where an aged woman conveys substantially all of her prop-
erty to her daughter, relying upon the daughter's promise to pay
her the net income of the property during her lifetime, a court of
equity will require a scrupulous observance of the obligation by
the grantee, and may, from the grantee's refusal to perform, infer
a fraudulent intent on her part in the first instance or a determina-
tion to abandon the contract, and will be justified in setting aside
the conveyance if there is any abuse of the trust by the grantee.

4. SAME—*when grantee is not entitled to reduce incumbrance
from income.* Where the right to the net income of property dur-
ing her lifetime is the only reservation made by an aged grantor
on conveying substantially all of her property to her daughter, the
grantee has no right to use any part of the income to reduce the
principal of incumbrances on the property.

5. APPEALS AND ERRORS—*when appeal from part of decree op-
erates as a severance.* Where there are independent matters dis-
posed of by a decree an appeal may be taken from that part dealing
with a particular subject, and such appeal operates as a severance
in the trial court from the parties and questions not concerned in
the appeal; and if the remaining part of the decree is interlocu-
tory, only, no appeal will lie therefrom.

APPEAL from the Circuit Court of Cook county; the
Hon. THOMAS G. WINDES, Judge, presiding.

H. M. PIERCE, and RYAN, CONDON & LIVINGSTON, for Asenath E. Mussey.

SEYMOUR EDGERTON, and THOMAS E. ROONEY, for Helen M. Shaw.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On December 3, 1910, Asenath E. Mussey, a widow, conveyed to her daughter, Helen M. Shaw, a farm of 253 acres in DuPage county and real estate on which there was an apartment building known as 5037, 5039, 5041 and 5043 Forestville avenue, in Chicago. Helen M. Shaw exchanged the farm in DuPage county for real estate upon which there was an apartment building known as 713, 715, 717, 719 and 721 Grace street, Chicago. On July 3, 1915, Asenath E. Mussey filed in the circuit court of Cook county her bill in equity asking the court to declare a trust for her use and benefit in the Forestville avenue property and the Grace street property, for which latter property the farm had been exchanged, and that defendant, Helen M. Shaw, be ordered and directed to convey the same to the complainant clear of all incumbrances except the amount of incumbrances existing at the execution of the deed, and praying for a receiver of the property to care for and manage the same and to collect the rents, issues and profits during the pendency of the suit. The grounds upon which the relief was asked were that the complainant was eighty years of age and was feeble and infirm; that at the time she conveyed the property there was a fiduciary and confidential relation between her and the defendant; that the only purpose of making the deed was to enable the defendant to sell and dispose of the property and invest the proceeds in interest-bearing securities to be delivered to the complainant, and that the defendant, knowing the feeble and infirm condition of the complainant, falsely and fraudulently and

with an intent to deceive her induced her to convey the property on an agreement that defendant would turn over the proceeds in interest-bearing securities to complainant.

The defendant answered, denying the existence of any confidential relation or the existence of any trust or agreement to dispose of the property for the benefit of the complainant, and alleging that the conveyance was absolute and she was the owner in fee simple of the premises, free from any claim of the complainant. The defendant afterward filed an amended answer, in which she again denied the existence of any fiduciary or confidential relation or that the deed was made for the purpose alleged in the bill, but admitted that she accepted the deed as a gift of the property from the complainant and upon an agreement that she should turn over to the complainant the rents, issues and profits, less the running expenses of the properties and interest on the incumbrances. Having admitted the existence of the trust and trust relation, the defendant by her answer then set up the Statute of Frauds, and alleged that the trust was not manifested and proved by any writing signed by her as a defense against the existence of any trust. The answer alleged that the defendant had turned over to the complainant rents, issues and profits of the properties until about September 1, 1913, since which time she had appropriated the same to herself to reduce the amount paid by her in expenses and payments of principal due on the incumbrances.

The chancellor heard the evidence and entered a decree finding that a fiduciary and confidential relation existed as alleged in the bill; that at the time the deed was made the complainant was seventy-five years of age and had been ailing in health and in a declining physical condition but was mentally sound and capable and understood the transaction; that she confided and trusted in the honesty, business principles and good judgment of the defendant and that she would fulfill her promise to pay to the complain-

274 — 23

ant the rents, issues and profits of the premises; that no. fraud or undue influence was practiced; that no consideration other than the agreement and promises of the defendant and the existing relation between mother and daughter was paid or received; that the complainant was dependent for her support and maintenance upon the income of the property with some income from other sources, and that the defendant exchanged the DuPage county farm, with the knowledge and approval of the complainant, for the Grace street property. The chancellor declared a trust in favor of the complainant, during the term of her natural life, in the net income, rents and profits from the Forestville avenue property and the Grace street property, refused to require a conveyance, and referred the cause to a master in chancery to state an account in accordance with the directions of the decree and to report the same to the court. Among the directions to the master for stating the account there was a direction that he should deduct from the gross income, rents and profits collected, interest on the incumbrances in the amounts and at the rate of interest as the same existed on the day of the conveyance of the Forestville avenue property and the DuPage county farm, the Grace street property to be treated as incumbered the same as the DuPage county farm at the time of the conveyance, but that the defendant should not be entitled to any credit for the sum paid by her to reduce the principal.

The complainant prayed an appeal from that part of the decree holding the legal title to be in the defendant subject to a trust for the life of the complainant. The defendant prayed an appeal from that part of the decree above recited limiting her to credit on incumbrances in the amounts and rates that existed when the deed was made. The appeals being from the same decree and upon precisely the same record, were consolidated for hearing.

The relations between the complainant and defendant at and before the making of the deed were of the most inti-

mate and confidential nature, both personally and in business matters, and the finding that a confidential relation existed was fully proved and is not disputed. The agreement for the conveyance was made at the home of the complainant in Madison, New Jersey, when the defendant, who lived in New York City, had come to see her mother during part of one day, and the sister of the complainant, who lived in Denver, Colorado, was also present. The three testified concerning the arrangement and the purpose of the conveyance. The complainant was eighty years of age, and her memory was so greatly impaired that the chancellor evidently did not rely upon it, in which we think he was justified. Complainant's sister testified substantially according to the averments of the bill, but upon cross-examination it appeared that she had testified in a deposition not used on the hearing, that in a conversation about the property the complainant said that her son had defrauded her out of a great deal of property and she did not care to let him have any more and she thought she would put it in the defendant's hands to keep it from him. The defendant gave a clear account of the transaction, which was in harmony with the facts and circumstances otherwise proved. The complainant obtained the property by a conveyance from her son, William P. Mussey, and his wife. She had been in business with her son in conducting a billiard hall inherited from her husband, and there was a difficulty between them and she brought a suit against her son for a settlement and accounting. In the settlement of that suit the Forestville avenue property and the DuPage county farm were conveyed to her in June, 1909. At the time of the conveyance to the defendant there were disquieting rumors of an attempt on the part of the son and his wife to set aside the settlement. The complainant had but two children, and the defendant was a skilled and experienced business woman with a considerable fortune of her own, and her husband was a stock broker, with or through whom she had made

investments. The complainant was a very large woman, tall and heavy, strong-willed and self-assertive, but she had reached an advanced age, and the defendant being unusually competent as a business woman to manage the property, it was quite natural that the conveyance should be made under the agreement stated by the defendant. When the agreement was made, on November 30, 1910, the complainant wrote to her attorney in Chicago that she wished to deed the farm and Forestville avenue property to the defendant and directed him to make a deed and do it at once, indicating a belief on her part that haste was necessary. In the letter she directed the attorney to carry out the defendant's instructions to the letter, and said that the defendant would write the attorney about the matter. The defendant inclosed that letter with one of her own, in which she stated that her mother had been very much upset by rumors about William and his wife, who had been spreading a report that they were cheated in the settlement and claimed that they would get back the farm at Naperville before long, and for that reason her mother wanted to take every precaution possible to prevent such a thing and was going to deed the farm and apartment house to the defendant. The letter contained this statement: "Of course, mother is to receive all benefits from the farm and apartment and is to pay the interest on mortgages, as heretofore." We are satisfied with the conclusion of the chancellor as to the nature and purpose of the conveyance.

The confidential relation being established, the burden was upon the defendant to prove that the transaction was not against equity and good conscience but was fair and reasonable. Where a fiduciary relation exists, a conveyance such as this one may be entirely valid, but equity raises a presumption against it and casts upon the party desiring to uphold it the burden of overcoming the presumption. (*Beach* v. *Wilton,* 244 Ill. 413; *Mors* v. *Peterson,* 261 id. 532; *Kern* v. *Beatty,* 267 id. 127.) In this case there was

an entire absence of actual influence to procure the conveyance, and considering the advanced age of the complainant, her desire that the defendant should have the property at her death and that it should not go to her son or his wife or their adopted child not of her blood, and the matters already stated, we agree with the chancellor that the arrangement was not unreasonable. The trust affirmed by the chancellor was admitted by the amended answer, and therefore nothing further need be said concerning the defense of the Statute of Frauds set up in the same answer.

It is contended that the complainant became entitled to a re-conveyance of the property because of the defendant's repudiation of the trust and refusal to pay the net income of the property to the complainant in fulfillment of her agreement and in accordance with the trust. This is the really serious question in the case. The defendant testified that the gross rental of the Grace street property was about $6000 a year and the gross rental of the Forestville avenue property was between $3500 and $4000, and the gross income from the two pieces of property was between $9500 and $10,000. From December, 1910, when the deed was made, up to September 1, 1913, the defendant paid to the complainant something less than $3000 in small payments, and on the hearing testified that she had paid $1000 in excess of what the complainant was entitled to. After September 1, 1913, she refused to pay anything to the complainant but appropriated the income to herself, and claimed the right to apply the same, at least in part, to the reduction of the principal of the incumbrance,—a purpose to which she had no semblance of a right to appropriate any of the income. It does not seem possible that the net income up to September 1, 1913, did not exceed $3000, and at that time she refused to make any further payments and continued in such refusal, so that the complainant was compelled to sue to secure anything. The complainant in her old age made a gift of nearly all her property to the de-

fendant, reserving only the income during the remainder of her life. The trust and confidence reposed by the complainant in the defendant called for the most scrupulous discharge of the obligation, and the keeping, in letter and spirit, of the trust, in order that the full net income of the property should be promptly and without question paid to the complainant and neither kept from her by unjust claims nor delayed by litigation. Where the owner of property in declining years makes a conveyance such as this, the failure of the grantee to fulfill the obligation assumed will justify an inference of a fraudulent intent in the first instance or a determination to abandon the contract, and a court of equity will take hold of the property itself to secure the object intended and prevent the gross wrong that would result from a disregard of the obligation and the delays of litigation, resulting in irreparable damage. The court will extend its protecting hand for the care and protection of the donor and rescind the conveyance upon a disregard or repudiation of the obligation. (*Frazier* v. *Miller,* 16 Ill. 48; *Oard* v. *Oard,* 59 id. 46; *Kusch* v. *Kusch,* 143 id. 353; *Campbell* v. *Potter,* 147 id. 576; *Cooper* v. *Gum,* 152 id. 471; *McClelland* v. *McClelland,* 176 id. 83; *Stebbins* v. *Petty,* 209 id. 291; *Fabrice* v. *Von der Brelie,* 190 id. 460; *Gillen* v. *Gillen,* 238 id. 218.) The defendant in her original answer most emphatically repudiated the trust and any right of complainant and afterwards gave no explanation of the reason for so doing, and if that denial had been adhered to, it would have been the clear duty of the chancellor to set aside the conveyance. It is possible, however, that the denial of the trust in the original answer was not the act of the defendant but that her legal advisors were responsible for it. Whatever the fact in that regard may be, a court of equity will not tolerate any abuse of the trust assumed in the acceptance of the gift, and if any course of the defendant amounting to such abuse shall occur the court should afford prompt relief. It retains juris-

diction for the purpose of the accounting, and with the affirmance of the decree concerning the title the entire case will be remanded to the circuit court, to the end that the rights of the complainant may be secured by any proper action and that prolonged litigation shall not deprive her of the benefit she was to have when she bestowed upon the defendant valuable property as a gift.

A motion was made by Asenath E. Mussey to dismiss the appeal of Helen M. Shaw from the direction hereinbefore quoted concerning the accounting or to transfer the appeal to the Appellate Court. Where there are independent matters disposed of by a decree an appeal may be taken from that part dealing with a particular subject, and such an appeal operates as a severance in the trial court from parties and questions not concerned in the appeal. Such an appeal was taken by Asenath E. Mussey from a part of the decree, and her appeal brought up only the particular question as to the nature of the conveyance and the trust. Helen M. Shaw was allowed an appeal from the direction concerning an accounting, and that part of the decree was interlocutory and not final. (*Stahl* v. *Stahl*, 220 Ill. 188; *Hynes* v. *Jennings*, 262 id. 268.) An appeal would not lie from that part of the decree, and the appeal of Helen M. Shaw could not be transferred to the Appellate Court and will be dismissed.

The part of the decree appealed from by Asenath E. Mussey is affirmed, but the cause is remanded to the circuit court for any further proceedings that may become necessary, and the appeal of Helen M. Shaw is dismissed.

*Decree on appeal of Asenath E. Mussey affirmed.*
*Appeal of Helen M. Shaw dismissed.*