(No. 30453.

EVELYN ALTSCHULER, Exrx., *et al.,* Appellees, *vs.* IRWIN I. ALTSCHULER, Appellant.

*Opinion filed March 18, 1948.*

Moses, Bachrach & Kennedy, (Walter Bachrach, Stanley J. Morris, and Morris Solomon, of counsel,) all of Chicago, for appellant.

Franklin J. Stransky, and Bernard Yedor, both of Chicago, for appellees.

Mr. Justice Thompson delivered the opinion of the court:

The business known as the Altschuler Iron & Steel Company was owned and operated by Isaac Altschuler during his lifetime. The real estate on which the plant and business of the company were located was owned by Isaac and his wife, Ida, in joint tenancy. Isaac died intestate July 10, 1930, leaving surviving, Ida, his widow, and their children, two daughters, Sarah and Sadie, and two sons, Irwin I., the defendant, and Samuel, the husband of plaintiff, as his only heirs-at-law. Irwin was then employed by his father in the business. He was appointed and acted as administrator of his father's estate, and on

October 7, 1931, filed his final report and was discharged. With the report he filed the receipt of the widow, acknowledging that she had received of him as administrator of the estate of Isaac Altschuler, deceased, an undivided one-third interest in and to all the assets of the estate, consisting of the business of the deceased known as the Altschuler Iron & Steel Company. Similar receipts for an undivided one-sixth interest, signed by Sarah, Sadie, Samuel and himself were also filed with the report.

Samuel had no connection with the business at the time of his father's death, but shortly thereafter became associated in its operation, and the two brothers continued together in the business until the death of Samuel on February 10, 1945. At that time the brothers were the sole owners of both the business and the real estate on which it was located, having previously acquired the interests of the other members of the family therein. Plaintiff and defendant are in dispute, however, as to what proportion of such interests was acquired and owned by each of the brothers. Plaintiff claims they participated equally in the purchase of these interests and after their acquisition were equal partners in the business, each owning a one-half interest therein and entitled to share equally in the profits therefrom. Defendant claims that the interests of the mother and sisters were so purchased that thereby he became the owner of a two-thirds and Samuel the owner of a one-third interest in the business, and each entitled in that proportion to share in the profits.

This suit was filed in the superior court of Cook County by plaintiff as executrix of the last will and testament of her deceased husband, Samuel Altschuler, and also in her individual capacity as devisee under his will, against the defendant for partition of the real estate and for an accounting of the partnership affairs. The complaint as amended alleged the above facts as to the death and heirship of Isaac Altschuler, his ownership of the business at the time

of his death, the administration of his estate by defendant, the subsequent death of his widow, Ida, her ownership at the time of her death of the real estate upon which the business was located and operated, and the acquisition by Samuel and the defendant of the interests of their mother and sisters in said real estate and business. The complaint averred that by the acquisition of such interests the defendant and Samuel became the sole owners of the real estate and business, each owning an undivided one-half thereof and entitled to share equally in the income and profits of the same; that in 1938 Government bonds and other securities belonging to the business were sold and the proceeds, together with cash belonging to the business, were divided equally between defendant and Samuel, each receiving $203,513.25; that said amount received by Samuel was deposited in a joint bank account in the names of Samuel and the defendant, so that the defendant could withdraw therefrom to make investments and purchase securities for the benefit of Samuel; that stocks, bonds and other securities were purchased by checks drawn on the account and were delivered to the defendant; that defendant, as administrator of his father's estate, inventoried the assets of the business at less than their actual value and did not account for assets belonging to the business at the time of the father's death; that defendant, after the acquisition of the ownership of the business by himself and Samuel, withdrew large sums of money from the business for which he never accounted to Samuel, and that he owns certain described stocks purchased by him with moneys belonging to the business; that Samuel never withdrew or received his full one-half share of the profits of the business; that defendant has never at any time since the death of Isaac accounted to Samuel for the assets and profits of the business or for the joint bank account; and that he has during all of such time sustained a continuous fiduciary relationship toward Samuel.

Defendant filed an amended answer and counterclaim. He denied that he and Samuel owned the business in equal shares, but alleged that he owned two thirds and Samuel one third thereof. He admitted that on May 4, 1938, there was deposited in the First National Bank of Chicago the sum of $203,413.25 in a joint bank account in the name of himself and Samuel, but alleged that the same was the property of the partnership and that a detailed accounting of all stocks and securities purchased with moneys drawn from the account had been furnished to Samuel during his lifetime. He denied that he had ever taken more than he was entitled to withdraw from the business or that Samuel had failed to draw his full share to which he was entitled from the business. He alleged that the real estate was partnership assets and not subject to partition. A contract between Samuel and himself dated December 31, 1936, was set out *in haec verba*. The contract stated that the business was a partnership, owned by Samuel and the defendant in the proportions of one third and two thirds, respectively, and contained a provision giving either of the partners, in case the other partner should die or desire to withdraw from the partnership, an option to purchase the interest of the deceased or withdrawing partner, the amount to be paid for such interest to be arrived at by an account taken of all the partnership property after provision made for payment of the partnership liabilities. Defendant alleged that as surviving partner he had an account taken of all the partnership property at the date of the death of Samuel on February 10, 1945; that in accordance with such account the proportionate share of one-third belonging to the estate of Samuel is $90,577.33, comprised of $81,602.56, standing to his credit as his share of the joint bank account and $8974.77, standing to his credit as his share of the capital account of the company; that on November 3, 1945, statement of said accounts, both as to the capital account of the company

and as to said bank account, were delivered to plaintiff as executrix of the estate of Samuel, together with a letter from defendant reciting that he was thereby exercising his option to purchase the interest of the decedent in the partnership property in accordance with the partnership agreement, and at the same time defendant tendered to her $90,577.33, which tender was refused. The prayer of the counterclaim was that plaintiff be ordered to execute and deliver to defendant an assignment of her interest and the interest of her deceased husband in the partnership property. By an amendment to his answer, defendant set up the additional defense of *laches*.

Plaintiff answered the counterclaim and also filed a reply to defendant's answer. The chancellor then referred the cause to a master in chancery to take and report testimony, together with conclusions of law and fact, upon the right of the plaintiff to an accounting of:

(a) All matters alleged in plaintiff's complaint to have occurred between July 10, 1930, and October 7, 1931;

(b) All matters alleged in said complaint to have occurred between October 7, 1931, and December 31, 1936;

(c) All matters alleged in said complaint to have occurred between December 31, 1936, and February 10, 1945;

(d) Certain funds deposited in and withdrawn from the First National Bank of Chicago.

The master conducted hearings, took testimony and made a report recommending that a decree for accounting be entered in accordance with the prayer of the complaint as amended and with the findings, conclusions and recommendations of the report. The master found and reported that a continuous fiduciary relationship existed between the two brothers during the entire period of time from July 10, 1930, to February 10, 1945, with trust and confidence reposed by Samuel in the defendant and with domination and control exercised by the defendant over the business, that the defendant, as administrator of his father's

estate or as a member of the partnership had never accounted to Samuel or any other member of the family; that the real estate described in the complaint is owned by plaintiff and defendant as tenants in common, each to the extent of an undivided one-half interest; that the defendant failed to prove by clear and convincing evidence the authenticity and binding effect of a sales agreement dated December 31, 1936, by which the mother and Sarah sold and assigned to defendant their interests in the business and also failed to prove by clear and convincing evidence the authenticity and binding effect of the partnership agreement; that defendant's attempted exercise of the alleged option contained in the partnership agreement was ineffective because the tendered amount included no payment to plaintiff on account of the good will of the business, that the purported statement of account tendered plaintiff was legally insufficient because it did not make full disclosure of the rights and assets of the partnership and failed to include any amount due plaintiff for the period of time from the death of Samuel to the date of the tender, and that the existence and attempted exercise of the option constitute no defense to plaintiff's claim for an accounting because the attempted exercise of the option was delayed unreasonably; that the statement accompanying the tender and purporting to show the net value of the partnership assets as of the date of Samuel's death was incorrect; but even assuming the amount tendered was correct and that there were no other valid objections as to the attempted exercise of the option, it was extremely doubtful, as a matter of law, whether the partnership agreement could possibly have conferred a valid option upon defendant.

The master, after making many findings of fact in regard to the actions and conduct of the two brothers in connection with the joint bank account and the securities purchased by moneys withdrawn therefrom, stated that there is a sharp conflict in the theories of plaintiff and

defendant as to the ownership of the joint account, that defendant takes the position that two thirds of the account was his property and the remaining one third the property of Samuel because the account was a part of the partnership assets, that plaintiff asserts the theory that when the interest of Samuel in the partnership was fixed at one-third, which was a substantial reduction of his interest therein, he was compensated by payment to him of the sum of $200,000, with which the joint account was started, and hence the account was entirely the property of Samuel, and in the alternative she contends that in any event the stocks purchased from the account and registered in the name of Samuel, together with all dividends therefrom and proceeds of the sale thereof, were the sole and exclusive property of Samuel. The master found that the defendant's theory was not sustained by the evidence, and that there was a clear preponderance of the evidence to the effect that the joint account was entirely separate and apart from the assets of the partnership. He further expressly stated that he made no finding and did not determine which of the theories advanced by plaintiff is correct, but stated that, upon the assumption that either is correct, the defendant had failed to show by that degree of clear and convincing evidence which the law requires that he had made a true and correct accounting to plaintiff as the personal representative of his deceased brother and that consequently the defendant should be required to account as to all sums of money which were deposited in the joint account, all stocks and securities purchased with moneys withdrawn from the account, and the proceeds of the sale of such stocks and securities.

The master also found that the defense of *laches* interposed by defendant has no application in this case and does not bar the right of plaintiff to an accounting.

The report contained no recommendation concerning the disposition of the counterclaim, but stated that in the

opinion of the master the disposition of the counterclaim should await final disposition of the entire cause on the merits.

Upon the coming in of the master's report, the chancellor entered a decree confirming and approving the same, except in one unimportant particular, and adopting the master's findings of fact, with the same force and effect as if such findings were in fact incorporated in the decree. The court, in the decree, expressly found that during all of the time intervening between July 10, 1930, and February 10, 1945, defendant sustained a fiduciary relationship to Samuel and owed him a duty to account, (1) as administrator of the estate of Isaac Altschuler, (2) as agent or trustee in the management and operation of the business under a written appointment by the Altschuler family, and (3) as copartner with Samuel in the operation of the business; and that defendant did not perform such duty to account. The court further found that defendant continuously acted as such agent and trustee for the family from July 14, 1930, through the entire year 1937 and into a part of 1938, and that the partnership between him and Samuel began in the early part of the year 1938 and continued without interruption until Samuel's death. The decree further found that upon the death of Samuel it became the duty of defendant, as surviving partner, to account to plaintiff, as the executrix of the last will and testament of Samuel, in respect to the partnership, and that defendant has not performed such duty. The court also found that the defense of *laches* interposed by defendant was not sustained; that the defendant acquired no right, title or interest in the share of Samuel in the partnership by reason of any proper exercise by him of the option contained in the alleged partnership agreement and that the attempted exercise of said alleged option was wholly ineffectual and of no force and effect; that the joint bank account and all securities purchased with funds drawn

therefrom were not partnership moneys or property and that in the management of said funds and the purchase and sale of such securities the defendant acted as a fiduciary and as such is required to account.

It was then ordered, adjudged and decreed that defendant had during all the time intervening between the death of Isaac and the death of Samuel sustained a fiduciary relationship toward Samuel, and he was ordered by the decree, as such fiduciary, to make a true and complete accounting of all his acts and doings as administrator of the estate of Isaac, as trustee and agent under written appointment by the widow and heirs of Isaac, and as a copartner with Samuel in the operation of the business. Defendant was also ordered to make an accounting of and concerning the funds deposited in the First National Bank of Chicago on May 4, 1938, together with the disposition made of the moneys of said account and the securities purchased with said funds and the proceeds derived from the sale of such securities. He was also ordered to make an accounting of all moneys, property and assets of the partnership business from the death of Samuel to the date of the making of such account, together with all income profits, capital gains, accounts and notes payable and other credits derived from the operation of the business after the death of Samuel.

The cause was referred to another master in chancery to state an account on the basis of (1) the master's report and transcript of testimony and exhibits filed with the report, (2) the accounting to be made by defendant as ordered by the decree and any objection to any item of said accounting which may be made by the plaintiff or by the next friend of the minor children of Samuel, and (3) any evidence, oral or documentary, which might be afterward introduced before said master by any of the parties to this suit.

The decree stated that the court reserved jurisdiction

of the cause for the entry of any and all orders and decrees with reference to said accounting which may arise during the pendency of said cause before the master in the stating of said account and with reference to the right of the plaintiff, individually, to a partition of the real estate.

Defendant filed notice of appeal from this decree and applied to the trial court for a *supersedeas* and an order permitting him to incorporate in the record upon appeal the original of the master's report and certain other documents in lieu of copies thereof, which application was denied on the ground that the decree was not a final and appealable order. Thereupon defendant filed a short record in the Appellate Court and moved that court for an order granting a *supersedeas,* permitting the use on appeal of the original documents in question, and extending the time in which to file a complete record in the cause. The Appellate Court heard the cause upon said motion of defendant and the countermotion of plaintiff to dismiss the appeal, and entered an order dismissing the appeal on the ground that the decree sought to be reviewed was not final and therefore the appeal was premature. From that judgment an appeal was allowed to this court.

A decree is "final" within the meaning of that term as used in section 77 of the Civil Practice Act concerning appeals, (Ill. Rev. Stat. 1947, chap. 110, par. 201,) if it finally disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate branch thereof. (*Brauer Machine and Supply Co.* v. *Parkhill Truck Co.* 383 Ill. 569; *Sebree* v. *Sebree,* 293 Ill. 228.) A decree which fully decides and finally disposes of the rights of the parties is final although it reserves incidental matters for consideration and refers the cause to a master to state an account. (*Rettig* v. *Zander,* 364 Ill. 112; *Chechik* v. *Koletsky,* 305 Ill. 518.) Where accounts are to be settled between the parties and the decree contains an order of reference by which the accounts are to be stated

according to certain principles fixed by the decree, the decree is final, but where the chancellor fails to fix the principles by which the accounts are to be stated and future judicial action and discretion on his part are contemplated and necessary, or where some equity different from the equities involved in the accounting remains for further adjudication, then such decree is interlocutory, unless the status of the account or matter to be thereafter determined is apart from the other equities involved. (*Smith* v. *Bunge,* 358 Ill. 229; *Eich* v. *Czervonko,* 330 Ill. 455; *Gray* v. *Ames,* 220 Ill. 251.) A decree is final if it determines the ultimate rights of the parties with respect to distinct matters which have no bearing on other matters left for further consideration, (*Hoier* v. *Kaplan,* 313 Ill. 448; *Mussey* v. *Shaw,* 274 Ill. 351,) or if the matters left for future determination are merely incidental to the ultimate rights which have been adjudicated by the decree. *DeGrasse* v. *Gossard,* 236 Ill. 73.

These definitions of final and interlocutory decrees are clear, and tested thereby most decrees can be readily classified as final or interlocutory; but cases sometimes arise where it is difficult to determine whether a particular decree is "final" within the meaning of that term as used in the statute concerning appeals. It is not the form of the decree, but the substance and effect of the adjudication which is determinative. A decree, notwithstanding it may be denominated interlocutory and direct further proceedings, may so completely adjudicate the rights of the parties as to constitute a final and appealable order. *Groves* v. *Farmers State Bank,* 368 Ill. 35.

The general rules are well settled governing appeals from decrees in chancery, (*Brauer Machine and Supply Co.* v. *Parkhill Truck Co.* 383 Ill. 569; *Johnson* v. *Northern Trust Co.* 265 Ill. 263,) as well as appeals from parts of a decree which are final and severable from the decree as a whole, or dispose of a definite and separate branch of

the case. (*Brauer Machine and Supply Co.* v. *Parkhill Truck Co.* 383 Ill. 569.) The application, however, of these rules with reference to appeals taken from decrees in chancery which determine finally the rights and liabilities of the parties, and, on the basis thereof, direct an accounting, presents questions difficult of solution.

In analyzing this record we are of the opinion the trial court made a final determination of the question that the written agreement dated December 31, 1936, was ineffective to release and discharge the defendant and to terminate his liability as a trustee and agent, after having, by the decree, determined the defendant was a trustee and agent under the written appointment of the Altschuler family, and accountable for the conduct and affairs of the company during its ownership by the Altschuler family.

The court also determined that the title to the property was not held by the defendant and the plaintiff's testate as partnership property; that the defendant did not acquire, as a result of the tender under a certain option agreement on November 3, 1945, title of plaintiff's testate to such personalty and realty, and that title to that property is now held by the plaintiff and the defendant as tenants in common.

We are of the opinion the above determination settles finally substantial property interests, rights and liabilities of the parties in litigation, and that the accounting necessarily followed such adjudication, which rendered the decree final and appealable.

In accordance with our views, the order dismissing the appeal is reversed and the cause remanded to the Appellate Court, with directions to consider the above questions as well as all other questions determined by the superior court of Cook County properly presented in the cause.

*Reversed and remanded, with directions.*