THOMAS B. O'DONNELL, Plaintiff-Appellee, *v*. SEARS, ROEBUCK & COMPANY *et al.*, Defendants-Appellees.—(THE DEPARTMENT OF PUBLIC AID *et al.*, Intervenors-Appellants.)

First District (1st Division)   No. 77-1557

Opinion filed April 9, 1979.

2

William P. Tuggle, Joan M. Pucillo, Robert C. Samko, and Gail D. Hasbrouck, all of Department of Legal Affairs, Health and Hospitals Governing Commission, of Chicago, for appellant Health and Hospitals Governing Commission of Cook County.

William J. Scott, Attorney General, of Chicago (George H. Klumpner, Assistant Attorney General, of counsel), for appellant Department of Public Aid.

Reed, Lucas & Doherty, of Chicago (Edward V. Scoby, of counsel), for appellee Thomas B. O'Donnell.

Pretzel, Stouffer, Nolan & Rooney, of Chicago, for appellee Sears, Roebuck & Company.

* Mr. JUSTICE BUCKLEY delivered the opinion of the court:

This is an appeal from an order entered by the circuit court of Cook County on July 29, 1977, denying intervenor-appellants' motion to vacate the court's order of May 12, 1977, which: (1) approved the terms of a settlement between plaintiff and defendants; (2) ordered plaintiff to pay $1,000 to intervenor-appellants in partial payment of hospital and public aid liens; and (3) ordered that further adjudication of these liens be continued for one year.

On June 13, 1972, plaintiff Thomas O'Donnell, age 16, suffered a broken neck and was rendered quadriplegic when he dove from a water-slide into an above-ground swimming pool located in a neighbor's yard. Suit was filed on plaintiff's behalf against numerous defendants on a products liability theory. By the time the case was assigned for trial the only defendants remaining were the Goshen Manufacturing Company, Inc. (Goshen), and Sears, Roebuck and Company (Sears), the manufacturer and retailer of the slide, respectively. The answers of the defendants' denied allegations of liability and asserted affirmative defenses of assumption of the risk and misuse of the product.

Since plaintiff suffered his injury he has incurred large medical, hospital and nursing treatment charges. A large part of plaintiff's expenses, $26,985.10, were paid by intervenor-appellant, the Illinois Department of Public Aid (Department). Additionally, from March 3, 1973, until September 4, 1974, plaintiff was hospitalized at Oak Forest Hospital, an extended care facility operated by intervenor-appellant, Health and Hospitals Governing Commission of Cook County (Commission). A balance of $10,898.75 remains outstanding from that hospitalization. Pursuant to section 1 of "An Act providing for a lien for nonprofit hospitals * * *" (Ill. Rev. Stat. 1977, ch. 82, par. 97), the Commission intervened in the litigation asserting a hospital lien against all claims and causes of action arising out of plaintiff's injury. The Commission perfected its lien by sending notice by registered mail to all

---

* This opinion was prepared by Justice Buckley while assigned to the Illinois Appellate Court, First District.

parties to the litigation. The Department similarly intervened and perfected its public aid lien pursuant to section 11—22 of the Public Aid Code (Ill. Rev. Stat. 1977, ch. 23, par. 11—22) by providing requisite notice to parties.

Before trial, plaintiff and defendants arrived at a settlement, whereby plaintiff agreed to discharge his claim against Sears and Goshen in exchange for defendants' agreement to pay plaintiff a lifetime annuity of $22,000 per year, with three percent increments compounded annually. The agreement provided that annuity payments were to be made in monthly installments commencing within 30 days of the execution of the agreement. The agreement further provided that plaintiff's attorney's fees would be determined by arbitration and paid by defendants. All liens of the Department and the Commission were to be satisfied solely by plaintiff.

On May 4, 1977, the first of four hearings was held concerning approval of the settlement and adjudication of the rights of the parties. (Ill. Rev. Stat. 1977, ch. 23, par. 11—22; Ill. Rev. Stat. 1977, ch. 82, par. 101.) At this hearing, plaintiff asked the Department and Commission to waive their liens. This request was declined by both lienholders and the trial court continued the cause.

On May 12, 1977, Fred Peters, a social worker from Illinois State Children's Hospital School, who was in charge of plaintiff's case, testified on plaintiff's behalf. Peters felt that plaintiff had the ability to function outside a public institution with the assistance of a home attendant and that plaintiff was capable of continuing his education. Peters further opined that plaintiff would be happier and better off at home rather than being institutionalized. He also believed that the annuity payments would be adequate to sustain plaintiff outside of an institution. Additionally, the trial court received into evidence a 1976 national insurance safety commission report containing custodial care figures for spinal cord injury victims.

Based on this evidence and testimony the circuit court entered an order which: (1) recited and approved the terms of the settlement; (2) stated that the average cost of maintaining plaintiff privately is $24,000 per year based on the national insurance safety commission report; (3) required plaintiff pay out of the first year of annuity payments $500 to the Department and $500 to the Commission; and (4) continued adjudication of the liens for one year until May 12, 1978, for the purpose of considering further evidence regarding plaintiff's ability to pay and the rights of the lienholders.

The Commission and Department filed timely post-trial motions to vacate the order of May 12, 1977. The Commission's motion alternatively sought an express, written finding by the court that its May 12 order was

final and that there was no just reason for delaying enforcement or appeal pursuant to Supreme Court Rule 304(a). (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a).) These motions were heard on June 21, 1977, and July 29, 1977, at which time the Commission produced Patricia Parent, manager of a nursing care service, as a witness. Parent testified that the rates for providing a full-time, live-in attendant to care for a quadriplegic would be $16,242.50 per year. Costs of education, medication, and hospitalization were not included in this figure. Parent admitted that she had never provided care or treatment for plaintiff and that having never cared for a quadriplegic, she was unfamiliar with the therapy and medication they required.

The circuit court denied the motion to vacate its order of May 12 but found that order to be final and that there was no just reason for delaying appeal. Both intervenors appeal the May 12, 1977, and July 29, 1977, orders of the circuit.

Intervenors' arguments upon appeal are substantially similar and concern settlement approval and lien adjudication. First, regarding lien adjudication, they contend the trial court erred by only partially adjudicating their liens and that the court was not authorized to reserve subject matter jurisdiction for one year. Second, with respect to approval of the settlement, intervenors contend that the trial court: (1) abused its discretion by approving an annuity settlement which did not provide for payment of their liens; (2) erred and abused its discretion since lien adjudication and settlement approval were not contemporaneous; and, (3) erred by not determining the full amount of the annuity settlement and attorney's fees prior to settlement approval. Because the Department's and Commission's liens are governed by separate statutes, we will address their contentions independently.

*Department of Public Aid Lien*

■■ We find that this court lacks jurisdiction to consider the Department's first contention regarding lien adjudication. The claims of both lienholders remained unadjudicated due to the court's continuance of that matter. If an order provides that jurisdiction be retained for future determination of matters of substantial controversy between the parties, it is not final. (*Altschuler v. Altschuler* (1948), 399 Ill. 559, 78 N.E.2d 225.) Clearly, final resolution of the rights of the lienholders is an integral matter of substantial controversy. Accordingly, we agree with the trial court that the order of May 12, 1977, did not constitute a final judgment dispositive of the entire proceeding. The issue of whether the trial court properly provided partial payment to the lienholders and continued adjudication is not properly before this court. None of the parties have raised the jurisdiction of this court as an issue. However, the parties cannot confer

jurisdiction where none exists. (*Watson v. Hobson* (1947), 396 Ill. 617, 72 N.E.2d 857; *Daab v. Ritter* (1938), 294 Ill. App. 203, 13 N.E.2d 636.) Pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)), the circuit court found the May 12, 1977, order was final and that there was no just reason to delay enforcement or appeal. In relevant part Rule 304(a) provides:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal."

The trial court cannot make a nonfinal order appealable merely by stating the language of Supreme Court Rule 304(a). An order must be final in its character, apart from the express finding. *Davis v. Childers* (1965), 33 Ill. 2d 297, 211 N.E.2d 364; *Smith v. Lewis* (1967), 85 Ill. App. 2d 246, 229 N.E.2d 323.

We find that the trial court properly invoked Rule 304(a) because approval of the settlement constituted a final judgment as to fewer than all claims. Rule 304(a) is applicable wherever an order adjudicates fewer than all the rights and liabilities at issue. (*Ariola v. Nigro* (1958), 13 Ill. 2d 200, 148 N.E.2d 787.)[1] The Public Aid Code grants the trial court discretion to approve settlements and in adjudicating, enforcing or reducing liens.

> "On petition filed by the Illinois Department, or by the local governmental unit or county if either is claiming a charge, or by the recipient, or by the defendant, the court, on written notice to all interested parties, may adjudicate the rights of the parties and enforce the charge. The court may approve the settlement of any claim, demand or cause of action either before or after a verdict, and nothing in this Section shall be construed as requiring the actual trial or final adjudication of any claim, demand or cause of action upon which the Illinois Department, the local governmental unit or county has charge. The court may determine what portion of the recovery shall be paid to the injured person and what portion shall be paid to the Illinois Department, the local governmental unit or county having a charge against the recovery. This Section shall not affect the priority of an attorney's lien under 'An Act concerning attorney's lien and for enforcement of same', filed June 16, 1909, as amended." (Ill. Rev. Stat. 1977, ch. 23, par. 11—22.)

---

[1] The court was construing former paragraph (2) of section 50 of the Civil Practice Act (Ill. Rev. Stat. 1955, ch. 110, par. 50(2)), which was supplanted by Rule 304(a) without change of substance. Ill. Ann. Stat., ch. 110A, par. 304(a), Committee Comments, at 586 (Smith-Hurd 1968) and 205 (Smith-Hurd Supp. 1978).

The Department alleges injury and submits that approval of the settlement has adversely affected its lien rights in this cause and established a dangerous precedent of circumvention of legitimate State debts through annuity settlements. Lien adjudication was continued; accordingly, settlement approval constituted final adjudication of fewer than all of the rights and liabilities at issue and issues pertaining to settlement approval are properly before this court.

The trial court's order called for continued adjudication of the rights of the lienholders on May 12, 1978. The record indicates that due to the pendency of this appeal that adjudication was never completed. This court, therefore, orders that the circuit court shall conduct the proposed evidentiary hearing concerning plaintiff's ability to pay and the rights of the lienholders with all reasonable haste upon the issuance of our mandate. We trust the parties will introduce new evidence relevant to plaintiff's actual and projected home care, educational, and medical expenses.

At oral argument intervenors expressed concern over the possibility that the trial court may never render a final, appealable adjudication of their liens, but rather grant another interim payment and continue the cause until the next year. They feared that enforcement of lien rights and collection of monies would be a difficult and expensive task if they are required to make annual appearances for small periodic payments. It would be speculation on our part to conclude that the circuit court will not make a final determination of the rights of the lienholders based upon evidence of costs incurred since the May 12, 1977, order. In our opinion, the record demonstrates the trial court's resolution to find a final solution, but even if that court decides to readjudicate the rights of the lienholders annually, the lienholders are not prejudiced by our refusal to address the issues surrounding lien adjudication. A judge's refusal to enter a final judgment does not justify review of an interlocutory order. Instead the suggested remedy in such a case is to invoke mandamus proceedings against the judge to compel entry of a proper final order. *People ex rel. Wilcox v. Drainage Commissioners* (1918), 282 Ill. 514, 118 N.E. 742.

We reach the merits with respect to issues concerning approval of the settlement. The settlement contained an express provision requiring that plaintiff assume full responsibility for any existing liens. The Department argues that the legislature did not intend judicial approval of an annuity settlement containing no provision for public aid lien satisfaction. They submit that either only lump sum settlements may be approved or that full lien adjudication and settlement approval must be simultaneous.

The intent of the legislature in reenacting section 11—22 of the Public Aid Code (see *Johnson v. Lynch* (1977), 66 Ill. 2d 242, 362 N.E.2d 345; Sostrin, *Practical Considerations of the Public Aid Lien*, 1975 Ill. Bar. J.

694, for the history of public aid lien adjudication) can best be attributed to a desire to balance conflicting social policies. On the one hand, public policy dictates that plaintiffs reimburse the State for medical care and treatment afforded whenever possible in order to lessen the burden on taxpayers and enable the State to assist others. *Beck v. Buena Park Hotel Corp.* (1964), 30 Ill. 2d 343, 196 N.E.2d 686; *Skaggs v. Junis* (1963), 28 Ill. 2d 199, 190 N.E.2d 731.

A competing policy is that compromise and settlement of disputed claims are favored by the courts. (*Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 356 N.E.2d 639.) This longstanding judicial policy has particular applicability to the area of public aid lien adjudication. (*Davis v. City of Chicago* (1974), 59 Ill. 2d 439, 322 N.E.2d 29; *Bender v. City of Chicago* (1974), 58 Ill. 2d 284, 319 N.E.2d 34.) The *Davis* Court construed the language of section 11—22 as permitting trial courts to exercise sound discretion in lien reduction/adjudication with the paramount objective that the wise exercise of discretion might assist in achieving settlements where trials might otherwise be necessary.

Similarly, we construe the discretionary language in section 11—22 concerning settlement approval to require that the trial court exercise sound discretion in achieving settlements rather than compelling litigation. Since annuity settlements are not specifically excluded by the statute, the foregoing policy considerations preclude us from implying their exclusion. Moreover, from our review of the record it is apparent that the annuity settlement offered by defendants represented their final offer prior to trial and at least provided for the requisite, although minimal, care and treatment of plaintiff. Accordingly, we find no abuse of discretion in the approval of this annuity settlement.

Nonetheless, we recognize the inherent dangers to the rights of lienholders that annuity settlements pose. In the present case, plaintiff is to receive yearly annuity payments in monthly installments, but there is merely a token, present recognition of the rights of the lienholders. If plaintiff dies before the Department's claim is fully adjudicated, its claims will not be satisfied since the annuity payments under the settlement are terminated by plaintiff's death. Furthermore, if plaintiff should leave the jurisdiction the Department would have difficulties enforcing its claim. Because of these potential dangers, we suggest that the issue of annuity settlements and their impact on public aid liens is ripe for legislative action. We submit that legislative concern should center upon a statutory design to enforce the rights of lienholders, yet uphold the validity of the annuity policy as a settlement device. Perhaps lienholders may be paid via annual installments or the court may liquidate the annuity policy, pay the lienholder "off the top" and order the purchase of a smaller annuity with the balance. We commend legislative study and eventual

implementation of prophylactic measures such as these. Absent such controlling legislation approval of the annuity was proper.

The trial court was faced with a difficult dilemma: either approve the terms of the annuity settlement or reject that settlement device and, most likely, sentence plaintiff to a lifetime of institutionalization. Defendants' liability under the facts of this case appears tenuous at best. Affirmative defenses of misuse of the product and assumption of the risk may have proved dispositive of the litigation. Rather than castigate defendants for failing to offer plaintiff a settlement that assured satisfaction of the Department's lien, we should commend them for their social consciousness and magnanimity in offering a settlement that would assure plaintiff private, at-home care rather than continued institutionalization at State expense.

The apparent motivation underlying the circuit court's order was that approval of the annuity settlement and continuation of lien adjudication would prevent plaintiff from being subjected to a vicious circle of institutionalization with resultant increased public aid liens. Trial and appeal of this litigation would be lengthy. During this time, plaintiff would, by necessity, be a public aid recipient, institutionalized at State expense and subject to an expanding public aid lien.

If, as the Department contends, the public aid lien were enforced in full at the time of settlement approval, the first year's annuity payment of $22,000 and $4,985.10 of the next year's monies would be directed to the Department. Under these circumstances, plaintiff would also be subjected to institutionalization at State expense. Public aid charges would eat up future annuity settlements as they accrued. In short, whether plaintiff went to trial or paid the State charges in full his future would likely be lifetime institutionalization at State expense.[2]

Eliminating a public aid recipient from welfare roles is an important factor for the trial court to consider (*Schramer v. Wurtinger* (1977), 47 Ill. App. 3d 1034, 1039 n.2, 362 N.E.2d 1075, 1079 n.2) and for the aforementioned reasons is of vital significance to the instant plaintiff. Balanced against these scenarios, we cannot find the trial court abused its discretion.

The Department further contends that the legislature did not intend judicial approval of annuity settlements because periodic payments to lienholders might be required. They rely on *Donoho v. O'Connell's, Inc.* (1960), 18 Ill. 2d 432, 438, 164 N.E.2d 52, where the supreme court found that one reason why payments made under the Workmen's Compensation and Occupational Diseases acts are expressly excluded from section 11— 22 is that the small amount of periodic payments might make collection a

---

[2] These results are offered without consideration of the $10,898.72 Commission hospital lien treated below.

difficult and expensive task. By analogy, the Department submits that the instant annuity may require it to enforce its charge through annual litigation with resultant periodic payments. As stated above we will not speculate that the trial court will force this result.

The Department, however, also has misconstrued the message of *Donoho v. O'Connell's, Inc.* (1960), 18 Ill. 2d 432, 164 N.E.2d 52. As pointed out in *Donoho*, public aid liens do not attach to Workmen's Compensation and Occupational Diseases acts payments pursuant to the express exclusion of section 11—22. The Department wishes us to extend *Donoho* to include other periodic payments such as the present annuity settlement. A direct extension of *Donoho*, however, would result in the prohibition of public aid lien attachment and perfection to periodic annuity payments. The Department does not seek this result; rather it contends the legislature must have intended to preclude judicial approval of annuity settlements.

Moreover, we do not find that the express exclusion of the Workmen's Compensation and Occupational Diseases acts from section 11—22 signifies a legislative desire to exclude annuity settlements. Such an interpretation would directly contravene the policy favoring settlements of personal injury litigation where public aid liens have been perfected. *Davis v. City of Chicago* (1974), 59 Ill. 2d 439, 322 N.E.2d 29.

Furthermore, we cannot imply a prohibition of annuity settlements from an express prohibition of the applicability of the Workmen's Compensation and Occupational Diseases acts because of the principle of *expressio unius est exclusio alterius. (Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769; *People v. Criswell* (1973), 12 Ill. App. 3d 102, 298 N.E.2d 391.) Where the legislature has indicated a preference for settlements even in derogation of monies owed the State and exhibited the ability to expressly list exceptions to that policy, we will not lightly infer additional exceptions for other periodic payments. For the above reasons we find this contention illogical and misconceived.

Having discounted the Department's arguments urging reversal due to the court's approval of this annuity form of settlement, we address its second major contention: that even if an annuity settlement is properly approved, settlement must be contemporaneous with adjudication, enforcement, and payment of lien charges. In support of this contention they stress the conjuctive *and* in section 11—22. "[T]he court, in written notice to all interested parties, may adjudicate the rights of the parties *and* enforce the charge." (Emphasis added.) This contention is without merit since the quote is taken out of context. In pertinent part the statutory language provides:

> "[T]he court, on written notice to all interested parties, may adjudicate the rights of the parties *and* enforce the charge. The

court may approve the *settlement* of any claim * * *. The court may determine what *portion* of the recovery shall be paid to the injured person and what portion shall be paid to the Illinois Department.* * *." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 23, par. 11—22.)

In statutory construction punctuation is controlling, unless the wording of the statute shows a different meaning. (*People v. James* (1927), 328 Ill. 262, 159 N.E. 194.) Here, Intervenors attempt to extend the importance of the word "and" when used in a phrase to control the entire statute. The sentences of the statute following the excepted language, however, indicate that reference to settlement and portioning the recovery are independent from the clause containing the conjunctive "and."

The Department further asserts that lien adjudication and settlement approval must be contemporaneous because the tense of the verbs affecting both provisions is the same. The verb referred to is the permissive term "may." This argument is frivolous in light of the construction-of-statutes act (Ill. Rev. Stat. 1977, ch. 131, par. 1.02), which provides: "Words in the present tense include the future." Accordingly, we find no statutory constraint requiring the circuit court to adjudicate public aid liens at the time of settlement approval.

■■ Neither do we find that the trial court abused its discretion in failing to adjudicate the lien at the time the annuity was approved.

Trial court discretion in adjudication and/or reduction of public aid liens is only properly exercised where there is evidence supporting the determination. (*Johnson v. Lynch* (1977), 66 Ill. 2d 242, 362 N.E.2d 345.) The burden of producing supporting evidence justifying lien reduction falls upon the public aid recipient. *Schramer v. Wurtinger* (1977), 47 Ill. App. 3d 1034, 362 N.E.2d 1075.

The *Schramer* court, additionally delineated evidentiary factors that should be of record to support reduction including: the cost of future maintenance, rehabilitation, future medical treatment reasonably to be foreseen, and the amount the debtor is realistically able to repay, involving consideration of the welfare recipient's foreseeable future needs and the resources which will be available to meet them. Moreover:

> "It may also involve the comparison of the net effect to the taxpayer by eliminating the recipient from welfare roles and translating the injury award into lessened welfare expenditures in the future." 47 Ill. App. 3d 1034, 1039 n.2, 362 N.E.2d 1075, 1079 n.2.

We do not read the record in the instant case as indicating that plaintiff was remiss in establishing evidence supporting lien reduction. The testimony of Fred Peters, cross-examination of Patricia Parent, and the National Insurance Safety Commission Report may have provided

sufficient evidence to adjudicate the Department's lien. Nonetheless, we do not believe existing case law compels the trial court to conclude proceedings at this point. The court's decision to continue the proceeding for one year in order to formulate evidence of actual costs incurred was, in our opinion, consistent with the mandate to produce a satisfactory evidentiary basis. (*Bender v. City of Chicago* (1974), 58 Ill. 2d 284, 319 N.E.2d 34.) The trial court was apparently attempting to determine how much money was needed to sustain plaintiff outside of an institution and intended to grant the lienholders the surplusage. Since there was conflicting evidence regarding per annum costs of at-home, private care, education, and medication, we cannot find that the circuit court abused its discretion in continuing lien adjudication pending one year's actual experience rather than fully adjudicating the lien when the settlement was approved.

The final major argument of the Department is that the trial court abused its discretion by commencing evidentiary hearing when the total amount of attorney's fees and the total settlement value were unknown. They assert that apportionment of attorney's fees among the parties is a factor to consider in any lien reduction the court may order (*Schramer v. Wurtinger* (1977), 47 Ill. App. 3d 1034, 362 N.E.2d 1075), and that the amount of a public aid recipient's net recovery is an important factor bearing upon sound exercise of discretion in lien adjudication. (*Davis v. City of Chicago* (1974), 59 Ill. 2d 439, 322 N.E.2d 29.) However, as is discussed above, the trial court has not reached a final adjudication as to lien rights. Accordingly, these assertions are premature.

For the aforementioned reasons we affirm the orders of the circuit court with respect to the Department and its public aid lien.

## The Commission's Hospital Lien

Our discussion regarding the Department's public aid lien is not controlling with respect to the contentions of the Commission since hospital liens are covered by a separate statute. The pertinent provisions of sections 1 and 5 of "An Act providing for a lien for nonprofit hospitals * * *" (Ill. Rev. Stat. 1977, ch. 82, pars. 97 and 101) follow:

"§1. Every hospital organized for nonprofit, or hospital maintained and operated entirely by a county, rendering service in the treatment, care and maintenance, of such injured person shall have a lien upon all such claims and causes of action for the amount of its reasonable charges * * *.

Provided, however, that *the total amount of all liens hereunder shall not exceed one-third of the sum paid or due* to said injured person on said claim or right of action, * * *.
* * *

§5. On petition filed by the injured person, or nonprofit hospital, or hospital maintained and operated entirely by a county, *the circuit court shall, on written notice to all interested adverse parties, adjudicate the rights of all interested parties and enforce the liens * * *.*" (Emphasis added.)

The mandatory language of these provisions differs from the discretionary grant of authority found in section 11—22 of the Public Aid Code. Statutory justification for trial court reduction of hospital liens is lacking; consequently, case law concerning public aid liens is distinguishable and inapplicable.

■■ The only limitation on the Commission's right to fully enforce its lien is the language: "the total amount of all liens hereunder shall not exceed one-third of the sum paid or due." The Commission's lien is $10,898.75. In order to fully enforce this lien plaintiff must have received or have due and owing him approximately $33,000. However, plaintiff's right to receive payments is conditioned upon his life. In order to have a vested right to receive $33,000 plaintiff must live to receive about 18 monthly installments. Yet, at the time of the trial court's orders, plaintiff had not received any annuity payments. Consequently, no sums were either "paid or due to said injured person" under the language and meaning of section 1. Therefore, the Commission's claim to full enforcement of its lien at the time of the orders complained of is premature. Accordingly, with respect to the Commission, the order of the trial court is appropriately affirmed.

We deem it necessary to make two final comments. First, the lienholders assert that policy considerations affecting public aid liens must apply to hospital liens. They contend that if hospital liens receive preferential treatment by the courts, then hospitals would refuse public aid reimbursement, allow their liens to increase and enforce their expanded liens in court. This contention is wholly frivolous. This court cannot conclude that public hospitals and the Department will conspire to circumvent the laws of this state. Moreover, it is patently unbelievable that a public hospital given the choice between "up-front" public aid reimbursement or litigation to enforce its treatment charges could opt for the latter.

Second, our discussion regarding the Commission's hospital lien is separate and distinct from our treatment of the Department's claim: (1) our jurisdictional disposition concerning adjudication of the Department's lien; and, (2) our resolution of issues with regard to settlement approval. This distinction is drawn because the hospital liens act does not bifurcate the duties of the circuit court as does the Public Aid Code. Under the hospital liens act, the court is only charged with the responsibility of adjudicating and enforcing hospital liens pursuant to a mechanical "one-third of proceeds" formula, whereas the Public Aid Code grants court

discretion concerning settlement approval and lien adjudication. Because of these statutory distinctions, it is improper for the Department and the Commission to adopt each other's arguments. Accordingly, the Commission may only properly assert arguments concerning hospital lien adjudication and due to the trial court's continuance of adjudication and for the aforementioned reasons those contentions are premature and not properly before this court.

Finally, because there is no jurisdictional basis as to either public aid or hospital lien adjudication, we will not address the question of whether, upon remand, the trial court may order plaintiff to make annual installment payments to the lienholders. We merely note that this possibility was addressed by the trial court and apparently agreed to by lienholders as an acceptable alternative. The record also indicates a willingness by the Commission and Department to compromise their claims by one-half and one-third respectively. By our comments we do not attempt to usurp the function of the trial court in determining any lien reduction or payment alternatives. On the contrary, we wish to commend the lienholders for their sense of social responsibility and trust that upon remand the parties will strive for a mutually satisfying solution to this cause.

Accordingly, with respect to both the Department and Commission, for all the aforementioned reasons, we affirm the order of the circuit court of Cook County and remand this cause for further hearing consistent with this opinion within the earliest, reasonable convenience of the circuit court as contemplated by its order of May 12, 1977.

In light of our affirmance, motions taken with the case are disposed of as follows:

(1) Defendants-appellees' motion to file a motion in lieu of an appellee's brief is allowed;

(2) Plaintiff-appellee's motion for the court to reconsider its order of October 10, 1978, is denied; and,

(3) Intervenor-appellant Illinois Department of Public Aid's motion that plaintiff-appellee post an appeal bond of $26,985.10 is denied.

Affirmed and remanded.

O'CONNOR and McGLOON, JJ., concur.