ROBERT SCHRAMER *et al.*, Plaintiffs-Appellees, *v.* VIRGIL WURTINGER *et al.*, Defendants.—(THE ILLINOIS DEPARTMENT OF PUBLIC AID, Intervenor-Appellant.)

Second District   No. 76-25

Opinion filed April 21, 1977.

William J. Scott, Attorney General, of Chicago (Paul V. Esposito, Assistant Attorney General, of counsel), for appellant.

Robert C. Jenkins, of Rissman & Jenkins, of De Kalb, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The Illinois Department of Public Aid appeals from an order which reduced its perfected charge for medical assistance rendered to the plaintiffs by one-half.

In the underlying suit the plaintiffs had sued the operator and owner of a motor vehicle which collided with their car causing the plaintiffs to suffer extremely severe personal injuries. The Department intervened to enforce its public aid lien (Ill. Rev. Stat. 1975, ch. 23, par. 11—22) in the amount of $25,726.73. At the hearing held on the Department's petition, counsel for plaintiffs stated that the personal injury case had been settled for $390,000. In narrative form, plaintiffs' counsel stated that the combined injuries of the plaintiffs were well in excess of the liability of the insurer and that the defendants lacked personal financial responsiblity. It was related that the plaintiff, Jessie Schramer, had suffered brain stem injury causing brain deterioration, inability to coordinate her muscle system, impaired speech and an inability to walk without assistance. Her husband, Robert Schramer, had sustained multiple fractures to his extremities requiring the use of rods and plates. His injuries also included

hemopneumo-thorax. As a result, although he had made a satisfactory recovery, he would, because of his injury and other circumstances, have employment difficulties.

The court was also informed that the Schramers are in their early twenties and have a son age four. Counsel advised the court that his firm's fees were 25% of the recovery and that they had absorbed costs of approximately $2000. Counsel also advised that he had prevailed upon the Schramers' own insurer to accept only 75% of its subrogation interests' for their personal injury protection benefits and that plaintiffs' counsel would take no fee for this portion of the recovery. Counsel also stated to the court that his firm is now counseling plaintiffs in estate planning so as to provide as much financial security to the family as possible. He offered to present documents, movies, tapes and the testimony of witnesses to support his narration. The court entered its order without regard to this offer.

The record shows no objection by the Department to the procedure which was followed. Following the narration by plaintiffs' counsel, counsel for the defendant Department placed in evidence a document showing the medical assistance payments. The order was then entered reducing the lien by 50% to the amount of $12,863.36.

The governing statute in pertinent part states:

"[T]he court, * * * may adjudicate the rights of the parties and enforce the charge. *The court may approve the settlement of any claim, demand or cause of action either before or after a verdict, and nothing in this Section shall be construed as requiring the actual trial or final adjudication of any claim, demand or cause of action upon which the Illinois Department, * * * has charge. The court may determine what portion of the recovery shall be paid to the injured person and what portion shall be paid to the Illinois Department, * * *.*" (Emphasis added.) Ill. Rev. Stat. 1975, ch. 23, par. 11—22.[1]

■■ The general statutory provision that the State shall have a charge upon a personal injury recovery for medical assistance furnished a public aid recipient has remained essentially the same as in predecessor statutes. (See Ill. Rev. Stat. 1961, ch. 23, par. 819.) The basic legislative philosophy is noted by the Illinois Supreme Court in *Beck v. Buena Park Hotel Corp.*, 30 Ill. 2d 343 (1964), at pages 346-47:

"The provisions in question reflect an intention to lessen the burden

---

[1] The apportionment of recovery provision was added by the legislature in 1967. Apparently in an attempt to obviate a constitutional question the same provision was reenacted in 1973 following the passage of the 1970 Illinois Constitution which, unlike the prior constitution, contained no expressed or implied prohibition of adjudication.

on taxpayers, or to enable the State to help others in need of assistance, by requiring each recipient, when he recovers this kind of a judgment, to reimburse the State for his proportionate part of the cost of medical protection."

See also *Skaggs v. Junis,* 28 Ill. 2d 199, 202 (1963).

The statute in the form presently before us was involved in *Bender v. City of Chicago,* 58 Ill. 2d 284 (1974). In *Bender,* the trial court participated in pretrial discussions involving an effort to settle a minor's personal injury claim. The unreported negotiations resulted in a settlement of $50,000 to the minor, and an order was entered reducing the public assistance lien by 50%, to $3153.78. The supreme court reversed, however, stating at pages 288-89:

"[I]t is not, nor could it be, argued that the court is thereby vested with unlimited discretion to 'adjudicate' a claim at 50% of the amount actually paid without supporting evidence justifying such reduction.\* \* \*

While we endorse out-of-court and pretrial settlements, and sympathize with the problems facing the trial judges in those endeavors, we cannot affirm the action of the trial judge in 'adjudicating' the Department's claim here at 50% of the amount admittedly paid on plaintiff's behalf in the absence of any evidence supporting that action."

The court in *Bender,* however, furnished no other standards to measure the exercise of the trial court's discretion.

In *Davis v. City of Chicago,* 59 Ill. 2d 439 (1974), the Supreme Court further examined section 11—22, having before it two appeals which had been consolidated for opinion. One involved a personal injury claim of Steven Davis, the other the personal injury claim of Richard Matthews, both minors. Matthews' suit was settled for $131,553.50 and the trial court reduced the State's $15,526.83 lien by one-third in order to assist in payment of attorney's fees. The trial court also deducted a pro-rata share of the costs from the State's claim. Davis' suit was settled for $15,000 and the State's lien was reduced by the trial court from $1028.88 to $100. It appears from the Statement of facts in the appellate court's opinion (13 Ill. App. 3d 160, 162) that in the trial court the attorneys' fees were set at the sum of $3750 and the balance of $11,150 ordered deposited in a bank for the account of the minor until his majority. The appellate court in *Davis* reversed the trial court and required that the Department's lien be paid in full. The supreme court affirmed the judgment of the appellate court in *Davis,* concluding that the State's lien should be paid in full. It noted with approval the appellate court's reasoning that no reduction was justified "considering the amount of the recovery and the amount to be received by the plaintiff." (59 Ill. 2d 439, 441.) It also affirmed the judgment of the circuit court in *Matthews v. City of Olney* without

elaboration. In its opinion the supreme court stated at pages 444-45:

> "We believe it is the clear intent of the statutory language used in the reenactment of section 11—22 to permit trial courts to exercise sound discretion in adjudicating charges claimed by the Department of Public Aid and to apportion any recovery between the Department and the plaintiff, taking into account attorneys' fees and costs. Such discretion, wisely exercised, may assist in achieving settlements where trials might otherwise be necessary."

■■ The limits of the trial judge's discretion to reduce the State's lien under section 11—22 and the standards to be applied to the exercise of discretion have not been clearly defined. It has been established, however, that any reduction must be justified by sufficient evidence to support the exercise of discretion. (See *Johnson v. Lynch,* 66 Ill. 2d 242 (1977); *Bender v. City of Chicago,* 58 Ill. 2d 284, 288-89 (1974).) Ordinarily, the issue should not be decided on the pleadings alone. (See *Bender v. City of Chicago,* 58 Ill. 2d 284 (1974).) In *Johnson v. Lynch,* the court held that the burden of producing evidence to support a reduction devolves upon the recipient. It further held that the "pleadings, answers to interrogatories, and argument of counsel are not evidence." 66 Ill. 2d 242, 246.

■■ The narrative of the plaintiffs' counsel in this case would appear to provide no greater evidentiary foundation than would the pleadings, answers to interrogatories and argument of counsel, and at best is a statement to the court as to the propriety of the reduction and a suggestion as to what the evidence would prove. We deem this insufficient. The record must, at the least, provide an adequate factual foundation for the trial court's sound exercise of discretion. We do not exclude the possibility that a formal evidentiary hearing may not be required in all cases if the basis and the need for a reduction clearly appears in evidence from the documents before the court. But under the circumstances of this case, without the evidence which the plaintiffs' counsel offered to produce but which the court declined to accept, the record does not support the 50% reduction of the State's lien. In particular, it does not directly address the cost of future maintenance, rehabilitation and future medical treatment reasonably to be foreseen. We therefore reverse and remand the cause with directions to conduct a hearing which will furnish the proper evidentiary basis for the trial court's exercise of discretion.

The standards which are to be followed in the exercise of this discretion on remand have not been fully provided either by the legislature or by court decisions. Nevertheless, the court clearly is not vested with

unlimited discretion in this area. (See *Bender v. City of Chicago*, 58 Ill. 2d 284, 288 (1974).) Beyond that, an analysis of the purpose of the statute and the implications from reviewing courts' rulings in particular cases are helpful in determining other limits to the exercise of discretion.

We find it implicit in the statutory scheme which permits the State to recover public aid payments that an accommodation has been sought between sometimes competing social philosophies. One purpose of the legislation is to lessen the burden on the taxpayer. (See *Beck v. Buena Park Hotel Corp.*, 30 Ill. 2d 343, 346-47 (1964).) It would also appear that a purpose of the legislation is to prevent double recovery by, or an unjust enrichment of, a public aid recipient who acquires a fund available for repayment. Implicit also in the provision which allows the trial court to reduce the State's lien is the policy of dealing fairly with a public aid recipient who is recompensed only partially for that which an injury has taken from him. An accommodation of these policies is best reached in our view if the amount of the State's lien is adjudicated at an amount the debtor is realistically able to repay.[2]

■■  Several more particular guidelines have been either stated or may be reasonably inferred from the few opinions which have dealt with the question of reducing the State's lien.[3] In the exercise of discretion the depletion of the lump sum settlement to the public aid recipient because of attorney's fees and costs is to be taken into account. (59 Ill. 2d 437, 444.) Although not expressed in *Davis*, the rationale would appear to be based upon the fairness of requiring the State to share in some fair proportion in the fees and costs required to generate the fund from which the State may recover all or a portion of its expenditures.

It also appears logical that the fact that medical expenses of the public aid recipient paid by the State are directly related to the recipient's cause of action for his injuries should be entitled to more than ordinary

---

[2] This, of course, will involve consideration of the welfare recipient's foreseeable future needs and the resources which will be available to meet them. (See Baldus, *Welfare as a Loan: An Empirical Study of the Recovery of Public Assistance Payments in the United States*, 25 Stanford L. Rev. 123, 226 (1973).) It may also involve the comparison of the net effect to the taxpayer by eliminating the recipient from welfare roles and translating the injury award into lessened welfare expenditures in the future. (See Sostrin, *Practical Considerations of the Public Aid Lien*, 63 Ill. B.J. 694, 699 (1975).) Where, for example the personal injury award does not compensate the victim in substantial measure after a . contingent fee is deducted, the settlement may be exhausted and leave the recipient with nothing unless the lien is reduced. See 25 Stanford L. Rev. at 168.

[3] Where pretrial negotiations are a part of the reduction process it would appear that one guidepost is whether the reduction of the State's lien would facilitate a settlement and thereby avoid the expense of a trial which could in the long view either prevent recovery by the State or reduce the fund available to satisfy its lien. (See *Davis v. City of Chicago*, 59 Ill. 2d 439, 444.) Here, however, the settlement had been consummated prior to the hearing.

consideration. *Cf.* 63 Ill. B.J. 694, 699 (1975).

In this situation the State is not seizing on the fortuity of a personal injury recovery to reimburse all of its advances for individual and family medical assistance. It is in effect claiming only that which the injured party would otherwise have directly paid as a result of the injury giving rise to the personal injury action. And in this respect the repayment prevents a double recovery by the public aid recipient.

Concerning the various factors mentioned it appears obvious that the amount of the public aid recipient's net recovery in the injury action as well as the relative amount of the State's claimed lien are important factors in determining the sound exercise of discretion in a particular case. See *Davis v. City of Chicago,* 59 Ill. 2d 439, 441 (1974).

Reversed and remanded with directions.

RECHENMACHER, P. J., and GUILD, J., concur.