MARIE JACKSON, Plaintiff-Appellee, *v.* DR. HAROLD THATCHER, d/b/a Jeffrey Clinic, Defendant-Appellee.—(THE DEPARTMENT OF PUBLIC AID, Intervenor-Appellant.)

First District (2nd Division)   No. 78-1487

Opinion filed January 29, 1980.

William J. Scott, Attorney General, of Chicago (Ellen P. Brewin, Special Assistant Attorney General, of counsel), for appellant.

Charles A. Boyle, of Chicago (William J. Harte and Robert A. Holstein, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

The Illinois Department of Public Aid (the Department) has appealed the order of the trial court adjudicating an 88% reduction in a welfare lien asserted by the Department as an intervenor in plaintiff's original malpractice cause of action. On appeal, the Department contends that the court's adjudication order was an abuse of discretion and should be reversed.

On December 27, 1974, plaintiff, Marie Jackson, filed a medical malpractice claim in the circuit court of Cook County alleging that negligent treatment by Dr. Harold Thatcher had resulted in a gangrenous condition requiring the amputation of her entire right leg and part of her left leg. The Department supplied medical and general cash assistance during plaintiff's illness and, after perfecting its lien charge in accordance with section 11—22 of the Illinois Public Aid Code (Ill. Rev. Stat. 1977, ch. 23, par. 11—22), entered the case as an intervenor on February 25, 1976 (see Ill. Rev. Stat. 1977, ch. 23, par. 11—22a).

In November of 1977, plaintiff and defendant agreed to a $62,500 settlement. Plaintiff then filed a petition with the trial court to adjudicate the public aid lien. At the first evidentiary hearing plaintiff testified to her diabetes, amputations, and need for constant care. She also stated that since she was unable to walk extended distances or to use public transportation, she relied on Medicar for necessary travel. Plaintiff added that she had received $6000 from her former employer because the initial injury, which precipitated the amputations, occurred at her place of employment. Under further examination by the court, plaintiff testified that her injury necessitated the purchase of items which would diminish her need for normal mobility, such as a freezer and washing machine.

At the second hearing plaintiff called the defendant's two attorneys, each from a different law firm, to testify. The first attorney stated that although the plaintiff may have had a prima facie case of negligence sufficient to get to the jury, it was one of very limited if not nonexistent liability. However, he decided to settle based upon the possibility of a runaway jury verdict grounded not in negligence but in jury sympathy for

plaintiff's obvious disfigurement and injury. He speculated that an adverse verdict could go as high as $400,000 to $600,000, if liability were assumed. He added that in his mind the entire settlement was for noneconomic rather than economic loss. The second attorney's testimony basically affirmed that of the first attorney although his estimate of the possible jury verdict was $400,000 to $700,000.

It was stipulated that the total public aid lien was $23,602.95, of which $21,612.71 went for medical assistance and $1,990.24 for general maintenance. During plaintiff's presentation of the defense attorneys' testimony, the Department objected, stating that it was not the nature of evidence described in Illinois cases as bearing on lien reduction.

The trial court adjudicated the lien and reduced the medical portion to $2,552.55 but retained the full general assistance lien of $1,990.24. Thus the total lien was reduced by $19,060 and the total charge was adjudicated at $4,542.79. The court issued an accompanying opinion detailing the various bases for its adjudication. In respect to the legislative policy of preventing unjust enrichment or double recovery by the plaintiff, whose medical bills are paid by public aid prior to tort recovery, the trial court stated that these considerations were not factors in the case at bar for two reasons. First, the recovery was only $62,500, not the $400,000 to $700,000 that plaintiff might have received had liability been clear; and secondly, in the light of the testimony of defendant's attorneys, there was no double recovery because medical expenses were not considered in the ultimate settlement offer.

Further, since this was a malpractice case, the court could not determine if plaintiff would have had to pay all those expenses paid by the State if she were not on public aid. The court also objected to the extent of the Department's lien, which would amount to almost two-thirds of plaintiff's net recovery. Since an Illinois statute limits hospital and doctor liens to not more than one-third of the sums due the injured party, the court viewed the Department as indirectly claiming more than the doctors and hospital could reach if they were imposing direct liens. The trial court concluded that the Department was entitled to 11% of the amounts paid as medical bills since plaintiff's settlement ($62,500) was 11% of the total injury (presumably the $600,000 figure cited by one of defendant's attorneys) in terms of dollars. The court found no basis to reduce the general assistance charge and awarded the full amount to the Department. From that adjudication, the Department has taken this appeal challenging both the legal bases upon which the trial judge made his findings and the resulting 88% reduction in the medical portion of the public aid lien.

Section 11—22 of the Public Aid Code states in relevant part:

"The Illinois Department shall have a charge upon all claims,

demands and causes of action for injuries to an applicant for or recipient of financial aid under Articles III, IV and V for the total amount of medical assistance provided the recipient from the time of injury to the date of recovery upon such claim, demand or cause of action.

* * *

In each case, the notice shall be served by certified mail or registered mail, upon the party or parties against whom the applicant or recipient has a claim, demand or cause of action. The notice shall claim the charge and describe the interest the Illinois Department, the local governmental unit, or the county, has in the claim, demand, or cause of action. The charge shall attach to any verdict or judgment entered and to any money or property which may be recovered on account of such claim, demand, cause of action or suit from and after the time of the service of the notice.

On petition filed by the Illinois Department, or by the local governmental unit or county if either is claiming a charge, or by the recipient, or by the defendant, the court, on written notice to all interested parties, may adjudicate the rights of the parties and enforce the charge. The court may approve the settlement of any claim, demand or cause of action either before or after a verdict, and nothing in this Section shall be construed as requiring the actual trial or final adjudication of any claim, demand or cause of action upon which the Illinois Department, the local governmental unit or county has charge. The court may determine what portion of the recovery shall be paid to the injured person and what portion shall be paid to the Illinois Department, the local governmental unit or county having a charge against the recovery. This Section shall not affect the priority of an attorney's lien under 'An Act concerning attorney's lien and for enforcement of same', filed June 16, 1909, as amended." Ill. Rev. Stat. 1977, ch. 23, par. 11—22.

■■ Even though there was a common law tradition that charity payments once made will be forgotten (Graham, *Public Assistance: The Right to Receive; The Obligation to Repay,* 43 N.Y.U.L. Rev. 451, 482 (1968)), various States have passed legislation which espouses a competing public policy favoring repayment. The rationale behind this modern philosophy was explained in *Beck v. Buena Park Hotel Corp.* (1964), 30 Ill. 2d 343, 196 N.E.2d 686. After holding the recoupment statute constitutional, our supreme court commented that "[t]he provisions in question reflect an intention to lessen the burden on taxpayers, or to enable the State to help others in need of assistance, by requiring each recipient, when he recovers this kind of a judgment, to

reimburse the State for his proportionate part of the cost of medical protection." (30 Ill. 2d 343, 346-47.) Similarly, the statutory scheme also attempts to prevent double recovery by or unjust enrichment of the public aid recipient who receives an award for his injuries. (*Wilkins v. Department of Public Aid* (1979), 73 Ill. App. 3d 504, 506, 392 N.E.2d 59.) In order to be fair to the injured recipient, however, the possible harshness of such a recovery statute has been tempered both by legislative provisions for judicial discretion in apportioning the lien and in Illinois case law which describes those factors that might militate towards reduction of the lien. Thus, such balancing of the legislative policy favoring repayment and the judicial concern for those factors affecting ability to repay has developed the requirement that an evidentiary hearing be held to inquire into the proposed grounds for reduction where the basis for the lien reduction is contested by the Department and does not appear clearly on the face of the record. (See *O'Donnell v. Sears, Roebuck & Co.* (1979), 71 Ill. App. 3d 1, 388 N.E.2d 1073; *Schramer v. Wurtinger* (1977), 47 Ill. App. 3d 1034, 362 N.E.2d 1075.) However, the actual burden of producing evidence sufficient to support a lien reduction is on the plaintiff (*Johnson v. Lynch* (1977), 66 Ill. 2d 242, 362 N.E.2d 345), and not on the Department.

Various factors have been delineated by prior cases which might provide guidance for a trial court's exercise of discretion in reducing the Department lien. Although those factors which would lead to a proper reduction of the lien have never been fully delineated by the legislature, it is well settled that for any reduction to be justified, there must be sufficient evidence to support the exercise of discretion. (See *Johnson v. Lynch*.) We have been fortunate in the instant case to have been provided for our review with an opinion by the trial judge detailing those factors that influenced his exercise of discretion and the reasons for his ultimate apportionment.

■■ The trial court cited *Bender v. City of Chicago* (1974), 58 Ill. 2d 284, 319 N.E.2d 34, as authority for the consideration of possible malpractice in reducing the Department lien. While there are perhaps instances where the malpractice might be so apparent as to alert the Department to stop payment to the suspect doctor or hospital, *Bender* does not mandate such a reduction based on the possibility that malpractice might later become an issue. "Even were we to assume, and we do not, that the belated assertion of malpractice charges apparently made during the unrecorded negotiations could be raised as a defense to the Department's claim for reimbursement, adequate proof thereof would be required." (58 Ill. 2d 284, 288.) Rather, as *Bender* indicates, there must be evidentiary support for an allegation that the public aid payments were made to a negligent party. No facts leading to such a conclusion were introduced at the

evidentiary hearing. Thus, a decision to reduce the lien based upon *Bender* considerations would be improper in the instant case where medical payments were stipulated and not challenged as improper by the plaintiff.

■■ Those evidentiary factors which relate to the public aid recipient's realistic ability to repay the Department loan should provide the basis for the lien adjudication. (*Schramer*, at 1039 n.2.) Here, testimony by defendant's lawyers regarding their reasons for determining to settle was not material to the court's deliberations on the recipient's ability to repay the Department. If the issue is ability to repay then the evidence should tend to establish a "fact that is of consequence to the determination of [that issue]." (*People v. Monroe* (1977), 66 Ill. 2d 317, 322, 362 N.E.2d 295, citing Fed. R. Ev. 401 (definition of relevant and material evidence).) Whether plaintiff might have recovered as much as $700,000 if she had gone to trial and if liability had been clear is irrelevant to the actual facts of the instant case. If there had been some attempt to link the possible award to her foreseeable future needs or to the amount required to eliminate her from the welfare rolls (see *O'Donnell*), then that evidence might have been of consequence to the lien adjudication. (See *Schramer*; Baldus, *Welfare as a Loan: An Empirical Study of the Recovery of Public Assistance Payments in the United States*, 25 Stan. L. Rev. 123, 226 (1973).) Similarly, the fact that the defendant's attorneys did not consider economic injuries in arriving at a settlement figure should not foreclose a legitimate creditor of plaintiff from collecting for payments made on her behalf, if plaintiff is able to repay. Such a result could effectively bar Department claims in those cases where a settlement is negotiated but the defendant's attorney does not consider his client truly liable for the plaintiff's injuries. Where, as in the case here, defendant settles to avoid exposure to the risk of a sympathy verdict rather than to recompense plaintiff for economic damages, the Department, without further evidence justifying reduction, should not be foreclosed based upon defendant's attorneys' characterization of the award.

■■ The third factor weighed by the trial court is of more import, but not in the manner actually considered. The amount of plaintiff's settlement following deduction of attorney's fees and costs, as compared to the size of the Department's lien, is a valid factor upon which reduction can be based. (See *Davis v. City of Chicago* (1974), 59 Ill. 2d 439, 444, 322 N.E.2d 29; *Moss v. Glynn* (1978), 66 Ill. App. 3d 221, 223-24, 383 N.E.2d 275.) It has further been held that the Department should share in plaintiff's costs of recovery. Thus a proportionate deduction would be appropriate. The court here however considered the substantial attorney's fees plus costs not in terms of a pro rata reduction of the Department claim, but in the light of the statutory one-third limitation on

hospital and doctor liens. (Ill. Rev. Stat. 1977, ch. 82, pars. 97, 101.1.) If a pro rata share of attorney's fees ($20,831.25 plus costs of $3,076.31 were charged to plaintiff) had been deducted from the State's claim, the medical lien would not be greater than one-third of the gross recovery. Gross recovery is the correct measure under the doctor and hospital limiting statutes, which specify not that the one-third standard applies to net recovery, but that it is measured against the "sum paid or due to said injured person * * *." (Ill. Rev. Stat. 1977, ch. 82, pars. 97, 101.1.) Therefore, since the lien with only this one deduction, and without any others which might be mandated on the taking of additional relevant evidence, would not fall within the proscriptions of these recovery limitation statutes, we do not need to consider whether the other contentions relating to construction of these statutes or their applicability to the Public Aid Code are valid.

On the taking of more evidence, the decision of the trial judge to reduce the Department claim may find support; yet, we cannot find on this appeal that there was a sufficient evidentiary basis for his determination that the claim should be reduced by 88%. His reasons for the reduction are conclusory, apparently resulting from his conception of the Department as a risk-bearing contingency creditor, rather than based on evidence presented about plaintiff's present and future material and medical needs. There was no evidence concerning the training which she might need to return to the work force, or indeed, evidence relative to the impossibility of future employment. We also note that the administrative costs of these cases might warrant a Department settlement or Department participation prior to the parties' settlement so that the recipient could be afforded a realistic idea of how much of any proposed settlement would be charged with the lien. In the absence of explicit statutory guidance, we can only speculate as to the type of evidence the legislature anticipated would influence the adjudication of Department loans. We are also concerned that without more definitive guidance, the adjudications may be too harsh or too lenient and may not reflect the intent of the legislature. Although evidentiary factors which have been held relevant to other adjudications may be pieced together from the limited case law on Department liens, we would prefer express statutory guidance. In accord with the above discussion, we reverse and remand to the trial court for further evidentiary hearings.

Reversed and remanded.

DOWNING and HARTMAN, JJ., concur.