**Deshauna JONES, A Minor by her Next Friend, Sonia WILLIAMS, Respondents,**

v.

**MISSOURI DEPARTMENT OF SOCIAL SERVICES, Appellant.**

No. 72304.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 17, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 7, 1998.

Gerald L. Meyr, Jefferson City, for appellant.

Stuart Cofman, Cofman & Townsley, St. Louis, for respondents.

AHRENS, Presiding Judge.

The Missouri Department of Social Services, Division of Medical Services ("DMS") appeals from a judgment reducing its lien pursuant to Section 208.215 RSMo Cum. Supp.1996.[1] DMS first contends the application of Section 208.215 was an unconstitutional and unlawful retrospective application of a statute in that the events creating respondents' liability to pay the lien occurred before the effective date of Section 208.215. DMS also contends the respondents presented insufficient evidence to support a reduction in the lien, the trial court did not consider all of the factors set out in Section 208.215.9, and the trial court did not make specific findings of fact. We affirm.

Deshauna Jones, a four year old child, was struck by a motorist while crossing a street in the City of St. Louis on July 27, 1995. As a direct result of the accident, Deshauna suffered permanent injuries. She underwent extensive medical treatment and incurred substantial medical expenses. Deshauna by her next friend and natural mother, Sonia

Williams, settled her claim against the motorist for the policy limits of $25,000.

Deshauna was a Medicaid recipient. DMS provides Medicaid to Missouri citizens in conjunction with the United States government. DMS paid at least $91,841 in Medicaid benefits to compensate medical providers for their treatment of Deshauna's injuries, resulting from the July 27, 1995 accident. DMS perfected a lien in the amount of $91,841 and sought to enforce the lien against the $25,000 proceeds from the settlement of the claim.

On October 2, 1996, Deshauna by her next friend, Sonia Williams, filed a petition with the St. Louis City Circuit Court requesting that the lien held by DMS be reduced under the authority of Section 208.215 RSMo Cum. Supp.1996. At the hearing on December 4, 1996, the parties stipulated that DMS held a properly perfected lien in the amount of $91,-841.

Counsel for DMS objected to further proceedings upon the ground that respondents were proceeding under the incorrect version of the statute. Counsel for DMS argued that because Section 208.215 did not take effect until August 28, 1996, its application would be an improper retrospective application of the statute under the Missouri Constitution. The court overruled the objection of DMS.

Sonia Williams testified she is Deshauna's natural mother. She further testified that as a result of the accident, Deshauna suffered a stroke, sustained brain damage affecting her learning ability, lost the use of one of her arms, and suffers from impaired speech. Deshauna cannot perform daily functions, such as dressing herself or going to the bathroom without assistance.

Doctors do not know Deshauna's prognosis with any certainty. Sonia Williams testified the doctors explained that Deshauna suffered brain damage from the stroke. Doctors hope that Deshauna can train herself, through therapy, to compensate for her losses. The doctors are uncertain whether Deshauna will ever fully recover. The doctors believe that in time Deshauna may be able to walk again.

---

1. All statutory citations are to RSMo Cum.Supp. 1996, unless otherwise noted.

Sonia Williams testified she received a bill from the Children's Hospital in the amount of $161,000 and a second bill in the amount of $25,000. She stated that Deshauna continues to receive therapy at Children's Hospital. She thought these bills were being paid by Medicaid.

Sonia Williams does not have the ability to pay for any of the medical bills incurred. She did not have any private insurance available to cover Deshauna. Deshauna's father had private medical insurance that paid approximately $20,000 of the bills, exhausting the insurance limits.

On January 13, 1997, the trial court found that Section 208.215.9 was a procedural statute and did not create or impair the substantive rights of DMS. The trial court considered the factors set forth in Section 208.215.9(1–6). Sonia Williams had entered a contingency fee agreement on behalf of her daughter, entitling an attorney to one-third of any amount recovered. The trial court reduced the lien of DMS to $8,333.34, which is the equivalent of fifty percent of the remaining recovery amount from the settlement of the claim against the motorist, after payment of attorney fees and costs. DMS appealed.

It is the position of DMS that the crucial events occurred before the effective date of Section 208.215 and the trial court's application of the amended statute was therefore unconstitutionally retrospective. Mo. Const. Art. 1, Section 13.

Section 208.215.9 provides that a party may file a petition requesting an evidentiary hearing for the purpose of determining whether a lien asserted by DMS should be reduced or apportioned. There is no right to a reduction hearing under the previous version, Section 208.215 RSMo 1994. Additionally, Section 208.215.7 RSMo 1994 provided "[t]he director shall have the right to recover the full amount of payments made to a provider under this chapter...." Our legislature removed the word "full" in the 1996 amendment. DMS contends these changes attach new disabilities to past transactions and impair its vested rights in violation of Missouri's Constitution. *State v. Thomaston,*

726 S.W.2d 448, 459 (Mo.App.1987). We disagree.

Article 1, Section 13 of the Missouri Constitution provides "no ex post facto law, nor law ... retrospective in its operation can be enacted." We, therefore, presume statutes operate prospectively. *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 872 (Mo. banc 1993). There are, however, two exceptions: (1) where the legislature manifests a clear intent that the statute act retroactively, and, (2) where the statute is solely procedural or remedial and does not affect the substantive rights of the parties. *Schweigert v. Braxton,* 902 S.W.2d 370 (Mo. App.1995).

Clearly, the legislature has not indicated by express language that Section 208.215 is to operate retroactively. Similarly, a thorough reading of the statute does not reveal an unavoidable implication that Section 208.215 should apply retroactively. *Dept. of Co. Serv. v. Villa Capri Homes,* 684 S.W.2d 327, 332 (Mo. banc 1985). The first exception does not apply.

DMS goes beyond this analysis, contending the decision to draft the statute in the future tense is indicative of the legislature's intent that the statute is to be applied only prospectively. *See Gershman Inv. Corp. v. Duckett Creek Sewer District,* 851 S.W.2d 765, 768 (Mo.App.1993). We are not persuaded that the tense of the language is controlling on this issue. *See Schweigert v. Braxton,* 902 S.W.2d 370 (Mo.App.1995) (finding retroactive application appropriate even though the statute at issue did not use language in the past tense).

Respondents contend the second exception is applicable in that Section 208.215 is procedural or remedial rather than substantive in nature. A law that makes only a procedural or remedial change and does not affect the substantive rights of a party is not "retrospective" and may be applied "retroactively". *State ex rel. Webster v. Myers,* 779 S.W.2d 286, 289 (Mo.App.1989) (*citing State v. Thomaston,* 726 S.W.2d 448, 459 (Mo.App. 1987)). There is no constitutional prohibition against the enactment of laws that may be

applied "retroactively", but not "retrospectively". *Id.*

Substantive law creates, defines, and regulates rights and duties giving rise to a cause of action. *Stewart v. Sturms,* 784 S.W.2d 257, 261 (Mo.App.1989). Moreover, substantive law takes away or impairs a vested right acquired under existing law, creates a new obligation, imposes a new duty, or attaches a new disability to a past transaction. *Schweigert,* 902 S.W.2d at 372 (*citing Gershman Inv. Corp.,* 851 S.W.2d at 767). Procedural law, on the other hand, prescribes a method of enforcing rights or obtaining redress for their invasion. *Wilkes v. Mo. Highway and Trasp. Com'n,* 762 S.W.2d 27, 28 (Mo. banc 1988). Remedial laws include laws that "merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Faulkner v. St. Luke's Hosp.,* 903 S.W.2d 588, 592 (Mo.App.1995). No person may claim a vested right in any particular mode of procedure for the enforcement or defense of his rights. *Vaughan v. Taft Broadcasting Co.,* 708 S.W.2d 656, 660 (Mo. banc 1986).

Respondents assert in their brief that a lien is a remedial creature, citing *S & R Builders & Suppliers, Inc. v. Marler,* 610 S.W.2d 690 (Mo.App.1980). Respondents reason that Section 208.215 relates to a type of lien and is therefore remedial in nature. *See also, Maran–Cooke, Inc. v. Purler Excavating, Inc.,* 585 S.W.2d 38, 40 (Mo. banc 1979). This argument fails. Both the mechanics lien and the statutory lien set out in Section 429.015.1 RSMo 1994 are remedial in nature, securing the contractual rights of a service provider. Both the prior and amended versions of Section 208.215 do more than create a statutory lien. Section 208.215 RSMo 1994 created a right for DMS to bring an action to recover benefits paid when a Medicaid recipient receives compensation from a third party for health services incurred due to personal injury, disability or disease. Therefore, unlike some statutory lien statutes, Section 208.215 is more than merely remedial in nature.

The respondents are, however, correct in arguing the rights afforded DMS do not differ between the prior and amended versions of Section 208.215. Under the amended version, DMS still has the same vested right. DMS may still recover benefits paid when a Medicaid recipient receives compensation from a third party for health services incurred due to personal injury, disability or disease. DMS is not left without redress by some effective procedure. *Vaughan,* 708 S.W.2d at 660. The difference between the two versions is in the remedy available to DMS. DMS may still take a lien against any recovery from a third party. A trial court may, however, now reduce the amount of the lien after consideration of the factors listed in Section 208.215.9. The legislature substituted a different remedy for the enforcement of DMS' right in its cause of action to recover public assistance benefits paid.

DMS argues its vested right in "full recovery" is impaired by the amended statute. "A vested right ... 'must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand ...'" *M & P Enterprises v. Transamerica Financial,* 944 S.W.2d 154, 160 (Mo. banc 1997) (*quoting People ex rel. Eitel v. Lindheimer,* 371 Ill. 367, 21 N.E.2d 318, 321 (1939)). DMS did not have a vested right in "full recovery", but merely in a cause of action to pursue recovery. Even under the previous version of 208.215, DMS' right to full recovery of the sums paid to recipient was contingent upon the availability of sufficient funds and subordinate to attorney's liens. Furthermore, DMS had the authority to "compromise, settle or waive any such claim in whole or in part ..." Section 208.215.14 RSMo 1994. Changes affecting the amount of recovery are remedial, not substantive. *See Wilkes v. Mo. Highway and Transp. Com'n,* 762 S.W.2d 27 (Mo. banc 1988) (holding an act abrogating sovereign immunity provides a remedy for a cause of action already existing for which redress could not be had); *Vaughan v. Taft Broadcasting Co.,* 708 S.W.2d 656 (Mo. banc 1986) (finding plaintiff

did not have a vested right in punitive damages prior to the entry of judgment).

Procedural or remedial statutes are generally applicable to all pending cases, not reduced to a final, unappealable judgment. *State ex rel. Faith Hosp. v. Enright*, 706 S.W.2d 852, 854 (Mo. banc 1986). Procedural or remedial amendments do not apply to any part of a proceeding completed prior to the effective date of the amendment. *State v. Thomaston*, 726 S.W.2d 448, 462 (Mo.App. 1987). The trial court's decision to reduce DMS' lien by applying the procedural or remedial changes set out in Section 208.215 did not apply to any part of the proceeding completed prior to the effective date of the amendment. The trial court did not err in applying the amended version of Section 208.215.

DMS contends that if Section 208.215 applies, then respondents did not satisfy their burden of production established in Section 208.215.10, the trial court did not consider all of the factors in Section 208.215.9, and the trial court did not make specific findings of fact. We review the trial court's decision by applying the *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) standards. In construing statutes, we must ascertain the legislative intent from the statute's language, considering the words used in their plain and ordinary meaning. *Tuft v. City of St. Louis*, 936 S.W.2d 113 (Mo.App. 1996). When the language is unambiguous, we are afforded no room for construction. *Id.*

Section 208.215.9 states that a court "shall consider competent evidence pertaining to" six factors. Furthermore, the statute allows a court to "consider the nature and extent of the injury, economic and noneconomic loss, settlement offers, comparative negligence as it applies to the case at hand, hospital costs, physician costs, and all other appropriate costs." Section 208.215.11. DMS argues the clear language of the statute requires a court to consider all factors set out in subsection nine, while the court may, at its option, consider the evidence re-

ferred to in subsection eleven. DMS reasons that a failure to produce evidence pertaining to all six of the factors set out in subsection nine is fatal to a request for lien reduction. We disagree.

It has long been the general rule in Missouri that the use of the word "shall" in a statute creates a mandatory obligation. *Welch v. Eastwind Care Center*, 890 S.W.2d 395 (Mo.App.1995). Section 208.215 states the trial court "shall conduct an evidentiary hearing and shall consider competent evidence pertaining to" six enumerated factors. The trial court conducted an evidentiary hearing. There is nothing in the record to indicate the trial court failed to consider all competent evidence pertaining to the enumerated factors.

The statute also places the burden of production on the party seeking lien reduction. Section 208.215.10. The party seeking lien reduction need only produce "evidence sufficient to support the exercise by the court of its discretion." Section 208.215.10. The statute does not mandate a burden of production on each enumerated factor set out in Section 208.215.9. Contrary to DMS' reading, the statute does not state each factor is a required "element" of a cause of action or that a failure to establish any one factor would defeat a recipient's request for lien reduction.

Section 208.215.11 states a trial court "may" consider several additional factors in deciding how to reduce and apportion the lien. The trial court is not required, however, to consider evidence pertaining to those factors. After the evidentiary hearing, the trial court must, therefore, consider all evidence pertinent to the factors listed in subsection nine and may consider evidence pertinent to the factors listed in subsection eleven.

Section 208.215.9 mirrors an Illinois statute, 305 ILCS 5/11–22, that determines the validity of Medicaid liens asserted pursuant to Illinois' administration of the Medicaid program. DMS suggests Illinois case law is persuasive authority.[2]

---

**2.** DMS cites the following cases to support its argument that a recipient must produce evidence

pertaining to all six factors: *Jackson v. Thatcher,* 80 Ill.App.3d 876, 36 Ill.Dec. 188, 400 N.E.2d

Where a statute copies nearly verbatim a statute of another state, there is a presumption that it was enacted with the construction placed upon it by courts of that state, unless contrary to clear meaning of the terms. *Gilroy–Sims & Associates, v. Downtown St. Louis Business Dist.,* 729 S.W.2d 504 (Mo.App.1987). Section 208.215.9 is clear and completely free from ambiguity. Therefore, we need not look at the construction placed upon the similar statute by the courts of Illinois. *See Ziervogel v. Royal Packing Co.,* 225 S.W.2d 798 (Mo.App.1950).

Moreover, the Illinois cases cited by DMS do not support its contention. All of the cited cases pre-date the January 1, 1986 amendment to 305 ILCS 5/11–22, incorporating the provisions that Section 208.215.9 mirrors. Our research has revealed no Illinois cases addressing the issue presented by DMS in the instant case.

The trial court stated in its judgment that it considered the factors in subsection nine in making its determination to reduce the lien. We find the evidence presented to the trial court through stipulation and the testimony of Sonia Williams sufficient to support the trial court's exercise of discretion in favor of lien reduction.

DMS contends the trial court erred in failing to consider all six factors set out in Section 208.215.9(1–6) and to make specific findings as to each factor. In support of its argument, DMS recites the public policy rationale behind the statute, the legislative changes to the statute indicating "Medicaid is a payer of last resort", and its belief the statute mandates a trial court consider all six factors and make specific findings of fact as to each of the six factors set out in subsection nine.

The statutory scheme reflects our legislature's intention to lessen the burden on taxpayers, enabling the State to help others in need and to prevent double recovery by or unjust enrichment of a recipient who receives an award for his injuries. However, in fairness to the injured recipient, our legislature tempered the harshness of the original statute by including subsection nine in its amendment, providing judicial discretion in apportioning the lien. The statute attempts to balance competing public policy concerns.

Evidence pertaining to the six factors enumerated in subsection nine is essential in balancing these competing policy concerns. As stated above, we do not view the statute as requiring evidence of all six factors. The trial court has discretion in balancing the factors, depending on the facts in each case. In all cases, there must be sufficient evidence to support this exercise of discretion.

The statute does not require the trial court to make specific findings with regard to factors to be considered in making its determination. We, however, recognize findings of those facts that influenced the trial court's exercise of discretion and the reasons for ultimate apportionment would be useful for our review.

Several other Missouri statutes are illustrative of this point. Section 452.330 provides several factors to be considered in dividing marital property. Section 452.330 does not require specific findings. In the absence of a specific request, a trial court is not required to make specific findings with respect to each statutory factor governing division of marital property. *Bullard v. Bullard,* 929 S.W.2d 942 (Mo.App.1996). Section 211.183 RSMo 1994, concerning removal of a child from the home in a juvenile proceeding, differs in that it requires the court to make and enter specific findings. An order to remove a child from a home without specific findings is deficient. *In the Interest of T.B.,* 936 S.W.2d 913 (Mo.App.1997). Our legislature could have included language similar to that set out in Section 211.183 RSMo 1994 had it intended a court after a 208.215.9 hearing to make specific findings on each enumerated factor.

The trial court's judgment is supported by substantial evidence and does not erroneous-

608 (1980); *Wilkins v. Ill. Dept. of Public Aid,* 73 Ill.App.3d 504, 29 Ill.Dec. 502, 392 N.E.2d 59 (Ill.App.1979); *O'Donnell v. Sears, Roebuck & Co.,* 71 Ill.App.3d 1, 27 Ill.Dec. 110, 388 N.E.2d 1073 (1979); and *Schramer v. Wurtinger,* 47 Ill. App.3d 1034, 6 Ill.Dec. 253, 362 N.E.2d 1075 (1977).

ly declare or apply the law. The judgment of the trial court is affirmed.

CRANDALL and KAROHL, JJ., concur.