Timothy GRAVIER, Respondent,

v.

MISSOURI DEPARTMENT OF SOCIAL
SERVICES, DIVISION OF MEDICAL
SERVICES, Appellant.

No. 72506.

Missouri Court of Appeals,
Eastern District,
Division One.

March 17, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 4, 1998.

Gerald L. Meyr, Government Counsel, Jefferson City, for Appellant.

Theodore Dennis Dearing, Dearing & Hartzog, St. Louis, Edward M. Roth, Leritz, Plunkert & Bruning, St. Louis, for Respondent.

GARY M. GAERTNER, Judge.

Appellant, Missouri Department of Social Services, Division of Medical Services ("Department"), appeals the judgment entered by the Circuit Court of St. Louis County in favor of respondent, Timothy Gravier ("recipient"), on his petition for reduction of the Department's lien. We reverse and remand.

Recipient was rendered a quadriplegic as the result of a diving accident at his sister's home in June of 1992. Recipient was in the hospital for approximately two-and-a-half to three months after the accident. Department expended $31,598.80, in the form of Medicaid payments, to health care providers who treated recipient for his injuries. The Department had a lien against any recovery obtained by recipient pursuant to RSMo section 208.215.[1]

Recipient engaged the services of Dearing & Hertzog, L.C., to represent him in his claim against his sister's homeowner's insurance for damages arising from the accident. The firm was to receive 33.3% of any amount recovered from the insurance company, as well as any monies it expended in pursuit of the claim. Recipient and the insurance company ultimately settled recipient's claim for $50,000.

Thereafter, Department served notice on recipient that it had a lien in the amount of $31,598.80 for medical payments made on behalf of recipient and that it intended to execute the lien against the $50,000 settlement. Recipient filed a petition for reduction of the state's lien pursuant to RSMo section 208.215, requesting he be awarded the remaining portion of the settlement after the payment of his attorney's fees and costs.

On March 31, 1997, the trial court held the requisite hearing on recipient's petition, at which time the following evidence was adduced: before the accident, recipient had no physical limitations. He earned $30,000–$35,000 a year as a self-employed automobile

upholsterer. Recipient had already earned approximately $30,000 for the first six months of June 1992, when the accident occurred. The accident left him paralyzed from the chest down; he has the use of his arms but not his hands or fingers. He is able to push himself in a wheelchair and can drive his car, which has been fitted with adaptors. He did not expect further significant improvement.

Recipient was single and had two children from previous marriages. At the time of the hearing, the eldest child was emancipated, and the youngest child received support payments from the Social Security Administration on recipient's behalf. For a six month period after the accident, recipient had no income nor did he receive public aid. He borrowed $2,000 to $4,000 from his family and friends for support. During this time, he fell in arrears on his mortgage, his child support payments, and his state and federal taxes. Recipient then began receiving social security disability benefits; at the time of trial he received $970 a month. He testified he had incurred approximately $1,200 in additional medical expenses which were not covered by Medicaid.

At trial, recipient offered Exhibit A, which was prepared by a life planner and which contained estimated costs of recipient's anticipated annual needs.[2] These costs ranged from approximately $18,000 to $19,000. Recipient further testified he wanted to make certain architectural renovations to his home in order to increase his mobility.[3] At the time of the hearing, recipient was in school working toward a bachelor's degree in psychology, which was paid for by vocational rehabilitation.

Lastly, recipient testified he settled his claim against his sister's homeowner's insurance company for $50,000 because of the "liability questions and the difficulty of proving this kind of case." He acknowledged his attorney's fees were 33.3% of the settlement

---

1. All statutory references are to RSMo (Cum. Supp.1996) unless otherwise noted.

2. The needs were broken down into "Wheelchair Mobility," "Wheelchair Maintenance," "Durable Medical Items," "Aids for Independent Living," "Supplies," "Home Care," "Future Medical Care: Routine," "Transportation," "Architectural Renovation," and "Surgeries."

3. We note recipient's Exhibit A included a category for "Architectural Renovation," but listed no dollar amount in the space provided.

amount along with approximately $4,000 in costs. He also stated he had a lawsuit pending against the swimming pool manufacturer in the City of St. Louis.

On cross-examination, recipient acknowledged he had been given an abatement with respect to the missed mortgage payments, stated neither the Internal Revenue Service nor the Director of Revenue had taken any action against him with respect to his tax arrearage, and admitted neither ex-wife had proceeded against him for the missed child support payments. He further testified he had not worked out any repayment plan with those from whom he had borrowed money nor were any of them threatening action against him for repayment.

Recipient testified he did not have medical insurance at the time of the accident. He did not know if he would have had to pay the bills which were paid by Medicaid. With respect to the medical costs which he had subsequently incurred, recipient could not place a dollar amount on this debt,[4] and testified he was paying it off in monthly installments of $30 to $40. He stated he no longer received Medicaid, but received Medicare, Part A. According to recipient, this covered "any type of hospitalization ... in a limited form" but excluded doctors' visits. Recipient further testified he is in need of medical treatment for kidney and bladder problems, which are care issues peculiar to quadriplegics.

At the close of the case, Department offered into evidence Exhibit 1, which included calculations on the Department's pro rata share of recipient's attorney's fees and costs. Department indicated its willingness to reduce its lien by its pro rata share of these expenses, for a total lien amount of $17,905.99. Department also submitted Exhibit 2, a billing statement regarding recipient's medical treatment and examples of claim documents.

The trial court subsequently entered its judgment in favor of recipient and recipient's attorney. The trial court found recipient suffered permanent injuries which left him paralyzed from the chest down. It further found recipient could no longer work as an auto upholsterer, was in arrears on his child support, taxes, and mortgage, and was not malingering, but was attending school to obtain a bachelor's degree. The court entered its findings regarding the amount of the settlement, the amount of the attorney's fees and costs, and the amount of Department's lien. It thereafter awarded recipient's attorney $21,666.66, the full amount of his fees and costs. It awarded recipient $28,333.34, the remaining balance of the settlement, stating,

> that fifty-thousand dollars ($50,000.) does not compensate [recipient] for his injuries, and that [recipient] is not being unjustly enriched by a failure to pay, as against this fund, the [Department's] charge; nor, is the failure to pay the [Department's] charge from this fund likely to lead to a double recovery.

The trial court further held Department's lien was not to be reduced, but rather was to be a charge against any subsequent recovery from recipient's litigation against the swimming pool manufacturer. Department appeals.

Department raises three issues on appeal, arguing different theories as to why the trial court erred in awarding Department no portion of the settlement recovery. Because we find Department's second issue dispositive, we address it first. In its second point on appeal, Department argues the trial court erred in denying it any part of the recovery as the recipient produced insufficient evidence on which to base the judgment. We agree.

RSMo section 208.215 governs the disposition of this case and sets forth the law pertaining to monies contributed by the state in the form of Medicaid. Generally, Medicaid is the payer of last resort. RSMo section 208.215.1. Under the statute, Department is entitled to recover, by way of lien, monies expended for care on behalf of persons who have been injured. *Id.* at 208.215.8. Applicants or recipients, by application, assign to Department their rights to any funds which

---

4. On direct-examination, recipient's attorney asked recipient if those bills were "in the approx- imate amount of $1,200," to which recipient replied, "Something like that."

may be recovered from liable third parties. *Id.* at 208.215.4. Prior to the current version of the statute, Department was entitled to recover the full amount of payments made to providers on behalf of injured persons. *See* RSMo section 208.215.7 (1994). However, the General Assembly amended the statute in 1996 so as to allow interested parties to petition the court to adjudicate their rights and to reduce the amount of the state's charge. RSMo section 208.215.9.

In adjudicating the rights of the parties, the trial court

... shall conduct an evidentiary hearing and shall consider competent evidence pertaining to the following matters:

(1) The amount of the charge sought to be enforced against the recovery when expressed as a percentage of the gross amount of the recovery; the amount of the charge sought to be enforced against the recovery when expressed as a percentage of the amount obtained by subtracting from the gross amount of the recovery the total attorney's fees and other costs incurred by the recipient incident to the recovery; and whether the department should, as a matter of fairness and equity, bear its proportionate share of the fees and costs incurred to generate the recovery from which the charge is sought to be satisfied;

(2) The amount, if any, of the attorney's fees and other costs incurred by the recipient incident to the recovery and paid by the recipient up to the time of recovery, and the amount of such fees and costs remaining unpaid at the time of recovery;

(3) The total hospital, doctor and other medical expenses incurred for care and treatment of the injury to the date of recovery therefor, the portion of such expenses theretofore paid by the recipient, by insurance provided by the recipient, and by the department, and the amount of such previously incurred expenses which remain unpaid at the time of recovery and by whom such incurred, unpaid expenses are to be paid;

(4) Whether the recovery represents less than substantially full recompense for the injury and the hospital, doctor and other medical expenses incurred to the date of recovery for the care and treatment of the injury, so that reduction of the charge sought to be enforced against the recovery would not likely result in a double recovery or unjust enrichment to the recipient;

(5) The age of the recipient and of persons dependent for support upon the recipient, the nature and permanency of the recipient's injuries as they affect not only the future employability and education of the recipient but also the reasonably necessary and foreseeable future material, maintenance, medical rehabilitative and training needs of the recipient, the cost of such reasonably necessary and foreseeable future needs, and the resources available to meet such needs and pay such costs;

(6) The realistic ability of the recipient to repay in whole or in part the charge sought to be enforced against the recovery when judged in light of the factors enumerated above.

RSMo section 208.215.9. The person requesting the reduction bears the burden of producing "evidence sufficient to support the exercise by the court of its discretion to reduce the amount of a proven charge sought to be enforced against the recovery...." RSMo section 208.215.10.

█ The new provisions in the statute have not been interpreted by our courts. However, the new subsections mirror Illinois' statute governing these actions. *See* 305 ILCS 5/11–22 (1994).[5] Illinois courts have found the provision to demonstrate their legislature's desire to balance conflicting social policies, which includes the public policy that recipients reimburse the state for care and treatment whenever possible so as to lessen the burden on taxpayers and to further enable the state to help others in need. *O'Donnell v. Sears, Roebuck & Co.,* 71 Ill.App.3d 1, 27 Ill.Dec. 110, 116, 388 N.E.2d 1073, 1079 (1979). This policy also attempts to prevent a double recovery on behalf of a recipient who, after obtaining funds for repayment, would be unjustly enriched if repayment

**5.** The statute was amended without substantial change effective July 1, 1997.

were not made. *Moss v. Glynn*, 66 Ill. App.3d 221, 22 Ill.Dec. 799, 801, 383 N.E.2d 275, 277 (3 Dist.1978). It also encompasses the competing policy of dealing fairly with a public aid recipient who is recompensed only partially for what he or she has lost by virtue of his or her injury. *Schramer v. Wurtinger*, 47 Ill.App.3d 1034, 6 Ill.Dec. 253, 257, 362 N.E.2d 1075, 1079 (1977). These competing interests are inconsistent at best, and at worst, an attempt to accommodate them leaves one if not both parties dissatisfied. With these considerations in mind, we find the record lacks sufficient evidence to justify the trial court's award, which could in all practicality leave Department wholly without relief.[6]

In so holding, we find the evidence on several issues specifically set forth by the statute to be lacking. Of critical importance is evidence of the "total hospital, doctor and other medical expenses incurred for care and treatment" of recipient's injury up until the date of recovery. The only evidence susceptible of this characterization is the billing statement offered into evidence by Department.[7] Nothing reveals whether these billing records are complete up until the time of the settlement recovery, and the intimation from recipient's testimony is that they are not. The record further lacks competent evidence concerning the extent of and reasons for recipient's additional medical expenses. What the evidence demonstrates is Department paid over one-fourth of recipient's medical costs. What became of the remaining amount, if it was paid, and if so by whom is unknown. The record gives no indication recipient paid any of the costs he incurred; thus, the trial court's conclusion that recipient would not receive a double recovery is insupportable. Recipient bore the burden of producing competent evidence on this matter, which the trial court is charged by statute to consider. RSMo section 208.215.9–10.

Another aspect in which the record is deficient concerns the fifth factor, wherein the trial court must consider evidence of recipient's age, his injuries, their permanency and effect on his ability to work or obtain an education, any dependents, and recipient's reasonable foreseeable future needs, their cost, and the resources available to meet these needs. While the evidence revealed recipient suffered serious injuries at age thirty-two which prevented him from continuing with his previous employment, recipient's own testimony was that he wished to work and that he was going to school to achieve this end. Additionally, recipient offered into evidence an estimate from a life planner setting forth the foreseeable costs of recipient's annual care needs. However, perhaps more accurate and relevant evidence on this issue would come in the form of testimony or records or other documentation regarding what needs and expenses recipient has incurred during the years since his injury.[8] While the subject was briefly touched upon during Department's cross-examination of recipient, it was not developed. Additionally, evidence regarding Medicare benefits recipient received, what those benefits included or would include, and any other benefits recipient might be eligible for was vague if it was present at all.

Lastly, we address the evidence regarding the sixth and last factor considered, that is recipient's "realistic ability" to repay the state's lien in whole or in part. We note evidence bearing on this consideration is particularly important in the instant case, where the trial court pinned Department's right to reimbursement on a favorable outcome of recipient's pending litigation. While this may result in a mutually satisfactory outcome, the record cannot sustain such a conclusion. The only evidence about the pending litigation was adduced during the direct examination of recipient, and consists of the following dialogue:

---

6. Because we must remand the cause for further proceedings, we decline to decide whether the statute allows the trial court to enter a judgment awarding Department no portion of the settlement recovery.

7. The document evidences recipient had medical expenses amounting to over $114,000, for which Department paid $31,598.80.

8. Recipient suffered his injury in June of 1992, and the hearing was held in March of 1997.

**154**

Q. In addition to [the $50,000 settlement recovery] is there also some pending litigation in the City of St. Louis regarding your accident?

A. Yes, there is.

Q. And that litigation involves a claim against the swimming pool manufacturer; is that correct?

A. That is correct.

Q. As far as you know there haven't been any settlement offers in that case so far?

A. As far as I know.

The record does not contain a copy of the petition filed in that lawsuit, nor does it indicate under what theory recipient is proceeding. It appears from the cause number the case was filed in 1997, but beyond that there is no evidence regarding how long the suit has been pending, when the suit is expected to go to trial or if it is expected to settle, and the likelihood of a successful outcome. Without evidence of these matters, the judgment stating the state's charge is to be satisfied from any proceeds so recovered is based on nothing more than speculation on and hope for a favorable result, and could very well leave the state with no recovery at all.

As we previously stated, the decision to reduce a lien held by the state and by what amount can be a difficult one. Striking a fair balance is more burdensome in situations like that presently before us, where recipient suffered grave and permanent injuries. However, our legislature, anticipating these difficulties, provided a framework for parties and trial courts to follow. The need for competent evidence on the enumerated factors is especially important when it appears any recovery may be insufficient to adequately compensate all parties.

█ Finally, we decline to hold that the party bearing the burden must "prove" each of the six factors, as argued by Department. While the trial court must consider each factor, the statute merely requires the party bearing the burden of production to provide "evidence sufficient to support the exercise by the court of its discretion...." RSMo section 208.215.10. In light of the widely varying facts in cases such as these, we will not go so far as to declare there exists no case where competent evidence on less than all six factors might meet this burden. We merely find that, under the circumstances present in the instant case, the evidence adduced was insufficient to support the judgment. Moreover, we reject Department's contention the statute requires the trial court to enter findings on each of the factors. A clear reading of the statute shows the trial court must consider competent evidence on these matters, but requires nothing more. Rather, we find the judgment of a trial court may be sustained, irrespective of its findings or lack thereof, so long as the record supports it.

Accordingly, we reverse the judgment and remand the case for further proceedings consistent with this opinion.

GRIMM, P.J., and PUDLOWSKI, J., concur.